PURDY (ATKINSON v.). See Case No. 616.

PURDY (MEAD v.). See Case No. 9,367.

PURDY (SWOPE v.). See Case No. 13,704.

## Case No. 11,472.

### PURINTON v. HULL OF A NEW SHIP.

[2 Curt. 416.] [1]

Circuit Court, D. Maine. Sept. Term, 1855.[2]

MARITIME LIENS — LABOR PERFORMED BY SUB-CONTRACTOR—LOCAL LAW OF MAINE.

1. Under the local law of Maine, a subcontractor, who performs labor in building a vessel, may have a lien on such vessel.

[Cited in The Richard Busteed, Case No. 11,-764.]

[Cited in Rogers v. Currier, 79 Mass. 131. Cited in brief in Quimby v. Hazen, 54 Vt. 136.]

2. It is competent for the legislature to confer a lien in such a case.

[Appeal from the district court of the United States for the district of Maine.]

This was an appeal from a decree of the district court, in a suit by the appellee to enforce a lien for his wages as a joiner, for work done on the vessel proceeded against. It appeared that the claimants, being engaged in building this ship, contracted with one Chapman to do the joiner work at a fixed rate per ton. Chapman employed Purinton, the libellant, who did work on the vessel, amounting to $175. [From a decree of the district court for libelant (Case No. 11,473), respondents appealed.]

Mr. Evans, for appellant.

Mr. Gilbert, contra.

CURTIS, Circuit Justice. This case turns on the question whether a laborer, who contracts with a middle man, has a lien by the local law of Maine, for his wages earned in assisting to build a vessel. This depends on the construction of the act which confers the lien. (Rev. St. c. 125, § 35). The words of the law are: "Every ship carpenter, caulker, blacksmith, joiner, or other person, who shall perform labor or furnish materials for or on account of any vessel, &c., shall have a lien on such vessel for his wages, or materials, until four days after such vessel is launched, &c." The case is within the natural and obvious meaning of the words of the law. But it is insisted, that inasmuch as the claimant of the vessel made no contract with the libellant, and was under no liability to him, it cannot have been intended, and was not intended by the legislature to give him a lien upon the property of the claimant; that to create a lien on the property of one man, to secure a debt contracted by another is so unjust, that even if the legislature has power to do it, which was not admitted (see Thaxter v. Williams, 14

Pick. 53,) the presumption is strong it was not intended; and this presumption is not overcome by the words of this act, which require the labor to be done "for or on account of the vessel;" and it is insisted this labor was not done for or on account of the vessel, but for and on account of Chapman, who undertook the joiner work, and hired the libellant. This argument has been enforced with great ability, and requires careful consideration. I do not think there is a serious question, that the legislature may give liens to subcontractors. Congress and the legislatures of some of the states have so legislated, and effect has been allowed to their acts by the courts, when they have come in question. Winder. v. Caldwell, 14 How. [55 U. S.] 442; Barker v. Maxwell, 8 Watts, 478; Holdship v. Abercrombie, 9 Watts, 52; Witman v. Walker, 9 Watts & S. 183. Nor does there appear to be any difficulty, in point of principle, in allowing to the subcontractor, a lien on the property which he has assisted in preserving, improving, or creating. As Domat says (Liber 2, tit. 1, § 5, Cush. Ed., note, pp. 1741, 1744) it is, as it were his own thing, to the value of what he has laid out on it. It is doubtless true that a lien, being a proprietary interest in property, can only be created by the owner, or by some one acting in his behalf, and with his authority. But the authority possessed by a third person, to act for the owner in this particular, may be implied by the law from the relation in which such third person stands to the property, with the consent of the owner. That consent to occupy a particular relation to the property, is in many cases understood to carry along with it, a consent to do acts, which either by usage, or by force of positive law, may be done by one occupying that relation. Thus, a master appointed by a charterer, may create liens on the vessel, which bind the interest of the general owner. It being considered, that the owner let the vessel to the charterer, he impliedly empowered him and his master to create such liens, in particular classes of cases. And if the local law has given a lien to laborers, for the wages of their labor, it may well be considered, when an owner employs a contractor to do work, that he expects him to do, and consents he shall do, what he must be deemed to know will operate to create a proprietary interest in his property; and so, that such proprietary interest is created by his consent. Upon this ground the ancient admiralty law must have proceeded, when it allowed to the workmen, employed by an undertaker, a lien on the vessel, unless the owner gave express notice to the workmen, at the beginning of the work, of the nature of the arrangement between himself and the undertaker. Consulado, c. 54 (chapter 9 of Pardessus Col., vol. 2, p. 59). The subject is elaborately discussed by Emerigon and his commentator, Boulay-Paty (Emerig. Con. a la Grosse, c.

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

[2] [Affirming Case No. 11,473.]

7, § 3, et conférence; 1 Boul.-P. Dr. Com. 1, p. 40, etc.). In the absence of such notice, the law considered the undertaker authorized to bind the property of the owner,—with such notice, domino non mandante, there was no lien. But there is no difficulty in holding, that an undertaker shall, in point of law, be deemed the mandatary of the owner, so far as to be able to confer on the workmen he employs a privileged lien on the subject of his work though not authorized to bind the owner personally. Such a presumption, juris et de jure, enacted by the legislature, though it may be questionable in point of policy, may be reconciled with legal principles; and it is for the legislature to consider its policy. There is at least one instance in which the common law has allowed a lien on similar grounds. It is that of an innkeeper who receives a horse from a wrongdoer. Yorke v. Grenaugh, 2 Ld. Raym. 867; Johnson v. Hill, 3 Starkie, 172. And see Fitch v. Newberry, 1 Doug. (Mich.) 1.

The true question in this case is, what was the intent of the legislature. As already observed, the words of the act, taken in their natural and obvious sense, include all workmen. They do not make the lien dependent on a contract with the owner personally, nor raise any question as to the person to whom credit was given. They assume that credit may be given to the vessel, without regard to its ownership, or how the title thereto stands. The work is to be done "for or on account of the vessel," not for or on account of any particular person. The enumeration of carpenters, caulkers, blacksmiths, joiners, points to those who may be and most usually are, subcontractors, and the declaration that "every carpenter, &c.," shall have a lien, indicates that though subcontractors they were included in the law. The lien is given as security for "wages." This would not quite correctly describe the contract price to be paid to a middle man, in a round sum, or at a fixed price per ton, as in this case. It is the appropriate word to designate the compensation of the workmen he employs.

It is urged that if the subcontractor has a lien, so has the contractor, and double liens are thus created. It is not necessary to decide whether such a double lien would exist under this statute. Winder v. Caldwell, 14 How. [55 U. S.] 434, has some tendency to show that the contractor would not have a lien. But the terms of the act there in question, were not the same as in this act. But admitting that double liens would exist, the extremely short limitation of four days after launching, must effectually protect the owner. It is true, he may pay his contractor in full, during the progress of the work, and within four days after the vessel is launched, his property may be subjected to pay the workmen whom the contractor employed. But it cannot be difficult for him to ascertain, before he pays his contractor in full, whether such claims exist, and he may protect himself from double payments, by a stipulation for a right to reserve enough to meet all existing liens.

It is further urged, that the act provides, that the lien is to be enforced by a writ of attachment of the vessel. It is admitted that the contractor and not the owner must be the defendant in such a suit. And it is asked whether the act could have intended to allow the property of A to be attached in a suit against B. Undoubtedly such a proceeding is anomalous. Perhaps great practical difficulties might exist in working out such a proceeding in the common law tribunals; especially as there does not seem to be any provision which would entitle A to notice, or would allow him to defend. But however anomalous the proceedings may be, the argument loses its force when we consider that, in the case of liens on buildings (sections 37, 38) subcontractors undoubtedly have liens, which are to be enforced also by attachment of the thing, attended by the same difficulties. On the other hand the 36th section contains language which strongly tends to show that the lien might be gained by employment under a contractor. Its language is: "In case any such creditor shall demand or claim more for his said services performed, or materials furnished as aforesaid, than is just and reasonable, the owner, agent, or contractor may tender the full, fair, and just balance to such claimant, and such tender, if refused, shall absolutely discharge the lien on such vessel." By conferring this right to make a tender upon the contractor, as well as upon the owner, it implies that for his debt as well as for the debt of the owner a lien may exist.

Upon the whole, I cannot avoid the conclusion that the workmen on a vessel are entitled to a lien under this act, though they be employed by one who contracts with the owner. In the case of Smith v. The Eastern Railroad [Case No. 13,039], I had occasion to construe a statute of the state of Massachusetts on this subject, and came to an opposite conclusion. That was the case of a material-man as to whom different considerations may be applicable, and the terms of the act and of other acts of that state in pari materia were quite different from those of the act now before me. It is to be regretted that legislation on this subject should not be more uniform in the different states, and that it should be so imperfectly expressed as to leave room for so many doubts and questions. A uniform system, in harmony with itself, and with those principles of the maritime law which prevail in respect to foreign vessels, would be extremely beneficial to all parties interested.