## SHAVER v. PENNSYLVANIA CO.

### (Circuit Court, N. D. Ohio, W. D. January 28, 1896.)

**1. CONTRACTS—VALIDITY—MEMBERSHIP IN RAILWAY RELIEF FUND.**

The Voluntary Relief Department of a railroad company was an organization formed to establish and manage a fund, made up of contributions by the members of the department and by the railway company, together with interest, gifts, etc., for the purpose of affording relief to disabled employés of the railway company, members of the department. Membership was confined to employés of the railway company, was purely voluntary, and could be terminated at any time. By the terms of his application, an employé of the railway company agreed that, if he should bring suit against the railway company for injuries suffered by him, payment of benefits from the relief fund should not be made till the suit was discontinued, or, if prosecuted, any payment on judgment or compromise should preclude any claim on the relief fund. *Held*, that the contract so made by an employé was valid.

**2. CONSTITUTIONAL LAW—LIBERTY OF CONTRACT—CLASS LEGISLATION.**

A statute of Ohio (87 Ohio Laws, p. 149) provides that no railroad company, insurance company, or association of other persons shall require any agreement or stipulation with any other person, in or about to enter the employment of a railroad company, whereby such person agrees to waive any right to damages from such railroad company for personal injuries, or any other right whatever, and all such agreements and stipulations shall be void. *Held*, that such statute violates the fourteenth amendment of the constitution of the United States, by depriving the persons affected by it of their liberty of contract, without due process of law, and also violates article 2, § 26, of the constitution of Ohio, providing that

all laws of a general nature shall have uniform operation throughout the state; since such statute is class legislation, affecting only railroad employés, and accordingly that such statute is void.

Scribner, Waite & Wachenheimer, for plaintiff.
E. W. Toleston, for defendant.

RICKS, District Judge. This suit was originally instituted in the court of common pleas for Lucas county, and, by due proceedings had, was removed by the defendant, which is a nonresident corporation, to this court. The plaintiff sues to recover for damages, because of certain negligence of the defendant and its agents in failing to have properly filled the space between the ties at a certain junction or cross-over, in said county, by reason of which plaintiff's foot was caught while undertaking to uncouple cars. There are certain other acts of negligence charged in the petition, which it is not necessary here to consider. Plaintiff claims permanent injury, and damages in the sum of $25,000. To this petition the defendant filed an answer, which, after denying the negligent acts charged in the petition, set up, as a third defense, that said plaintiff, at the time he received the injuries complained of, was a member of the Voluntary Relief Department of the Pennsylvania Lines West of Pittsburgh; that said Voluntary Relief Department is an organization formed for the purpose of establishing and managing a fund, known as a "relief fund," for the payment of definite amounts to employés contributing to the fund, who, under the regulations, are entitled thereto, when they are disabled by accident or sickness, and, in the event of their death, to their relatives or other beneficiaries specified in the application for insurance; that said relief fund is formed from voluntary contributions of the employés of the road, from contributions given by said defendant, the Pennsylvania Company, when necessary to make up any deficit, from income or profits derived from investments, or profits of the moneys of the fund, and such gifts and legacies as may be made for the use of the fund. The regulations governing said Voluntary Relief Department require that those who participate in the benefits of the relief fund must be employés in the service of the Pennsylvania Company, and be known as members of the relief fund. Defendant, further answering, says that no employé of the company is required to become a member of said relief fund; that the same is purely voluntary; that any one who has become a member may withdraw at any time, upon proper notice; that contributions from such members cease by so withdrawing. The defendant further says that participation in the benefits of such relief fund is based upon the application of the beneficiaries; that on the 3d day of January, 1894, the plaintiff in this case, being in the employ of the defendant company, applied for membership, and in said application agreed to be bound by the regulations of the said fund. Defendant further says that the application for membership was approved and accepted at the office of the superintendent of the relief department, and that thereupon said plaintiff became a member of said relief fund. De-

fendant further says that, when said plaintiff received the injuries complained of, he thereupon became entitled to the benefits growing out of his membership in said relief fund, by reason of the injury so received while in said service; that said plaintiff thereupon immediately applied to said department for such benefits, and received monthly payments therefrom, amounting in all to the sum of $399, until the commencement of this action, on the 25th of May, 1895. Defendant says that the plaintiff, in his application for membership, expressly agreed that, should he bring suit against either of the companies now associated in the administration of the relief department for damages on account of injury or death, payment of benefits from the relief fund on account of the same shall not be made until such suit is discontinued, or, if prosecuted to judgment or compromise, any payment of judgment or amount of compromise shall preclude any claim upon the relief fund for such injury or death. Defendant says that, the plaintiff having commenced suit against the defendant, payments to the plaintiff for the benefits accruing under said contract were suspended; and defendant says that by virtue of the agreement aforesaid, and the acceptance by the plaintiff of the benefits from said relief fund on account of said injuries, the said defendant thereupon became discharged from any and all liability to the plaintiff on account of said injuries. The plaintiff has demurred to this answer. He contends—First, that the contract set up in the answer is invalid; and, next, that it is in violation of an act of the legislature of Ohio passed in 1890, in 87 Ohio Laws, p. 149.

There are two questions to be determined upon the demurrer thus interposed. The first question is whether this contract between the plaintiff and the defendant is a valid one. The case, as presented to the court, rests entirely upon the pleadings. No evidence is before me, and 'the allegations of the defendant's answer are to be accepted as true by the plaintiff having demurred thereto. It therefore becomes important to emphasize the facts thus admitted. They are that the plaintiff voluntarily became a member of this relief department, with full knowledge of its rules and regulations. The answer further distinctly avers, and the demurrer admits it, that, by his application in writing to become a member of such relief department, the plaintiff agreed that the acceptance by him of benefits from the relief fund, for injury or death, should operate as a release of all claims for damages against said defendant arising from such injury or death. It will be observed that it is the acceptance of benefits from this relief fund which, by the agreement, releases the railroad company from a claim for damages. If the employé injured does not accept such benefits, but chooses to sue for damages, his right of action is unimpaired, and in no respect waived. This is the case as presented by the pleadings and admitted facts. It is not the question of whether a railroad company, by contract with its employés, can exempt itself from suits for personal injuries caused by its negligence. That, as a general rule, cannot be done. This case does not present that question, neither does it present an issue of fact as to whether this

contract for insurance is a voluntary one or not.   If the pleadings and evidence in a case should show that an employé entered into such a contract, ignorant of its terms, or when under restraint or duress or compulsion, the court would then be authorized, and it would be its duty, to inquire into that fact, and relieve against any wrong of that nature.   But, as before stated, no such question is now in any way presented.   The pleadings do not even suggest such an issue.   The sole question is whether, under the admitted facts already stated, this contract is valid.   There are decisions of the supreme courts of the states of Iowa, Maryland, Pennsylvania, and of state courts in Ohio, and of circuit courts of the United States in Ohio and Maryland, holding such contracts legal and binding.   Under this plan, employés of railroads are afforded protection by a species of insurance.   This sort of protection is not available to them in ordinary insurance companies, except at such high cost as to make it substantially unobtainable.   Members sick or injured are entitled to benefits, regardless of what causes their temporary disabilities.   They will thus receive benefits in cases where no claim against the railroad company could be made.   They could receive benefits, also, in cases where the injury was the result of their own contributory negligence, or of that of fellow servants in the same department of service, in both of which cases, as a rule, no right of action would arise against their employer.   Now, if employés desire to enjoy the benefits of such contracts, they should have the right to make them.   They are capable of deciding for themselves whether they want to contract for such protection.   It is not within the powers of a legislature to assume that this class of men need paternal legislation, and that, therefore, they will protect them by depriving them of the power to contract as other men may.

It may be instructive to quote from some of the decisions heretofore referred to, declaring similar contracts valid.   In the case of Johnson v. Railroad Co., 163 Pa. St. 127, 29 Atl. 854, the facts were that William B. Johnson, the plaintiff, was a brakeman, employed by the Philadelphia & Reading Railroad Company, and, while in said employ, became a member of the Philadelphia & Reading Relief Association. He made a voluntary application to become a member of that association, among others, upon the following conditions:

"And, in consideration of the contribution to be made by the Philadelphia & Reading Railroad Company to the funds of the association, I agree that acceptance of benefits from said relief fund for injuries or death shall operate as a release of all claims for damages against said company. my employer, arising from such injury or death, which could be made by or through me; and that I or my legal representatives will execute, or, where necessary, procure to be executed by others, such further instrument as may be necessary formally to evidence such acquittance."

The case resulted in a verdict for the defendant in the court below, and the supreme court (Justice Mitchell speaking for the court) said:

"It is further objected—and this is the only substantial question in the case—that the release was void, as against public policy. * * * In this case there is no provision exempting the company from liability for future negligence.   The benefits, by the regulations of the relief association, be-

come due to members whenever disabled by accident in the company's service, or by sickness, or injury other than in the company's service, without reference to the question of negligence at all. As these provisions include benefits in cases of accident, pure and simple, of injury by the negligence of fellow workmen, and by the member's own contributory negligence, it is apparent that they cover a wide field, in which there is no liability of the railroad company at all. Such cases are probably a large majority of those occurring to railroad employés; and the association, therefore, is of the highest order of beneficial societies. But, even in cases of injury through the company's negligence, there is no waiver of any right of action that the person injured may thereafter be entitled to. It is not the signing of the contract, but the acceptance of benefits after the accident, that constitutes the release. The injured party is therefore not stipulating for the future, but settling for the past. He is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby."

The case of Donald v. Railway Co. was decided by the supreme court of Iowa in 1895, and is reported in 61 N. W. 971. The plaintiff, Donald, sued the defendant, to recover damages for the killing of his son while engaged as a brakeman on a freight train. The son was a member of the Burlington Voluntary Relief Department. He voluntarily became a member of such department. Employment in the company's service in no way depended upon membership in that department. The fund from which the benefits were distributed was obtained by monthly assessments of its members, the amount being deducted from their monthly salaries. The expenses incidental to the operation of the relief department were paid by the company, and, in case the fund of the relief department is not sufficient, the company pays all benefits due in full. The following are the provisions of the regulations by which the son was to be bound in his contract of membership:

"Should a member or his legal representatives bring suit against the company for damages on account of the injury or death of such member, payment of benefits from the relief fund on account of the same shall not be made until such suit is discontinued; and if the suit shall proceed to judgment, or shall be compromised, all claims upon the relief fund for benefits on account of such injury or death shall be thereby precluded. I also agree that, in consideration of amounts paid and to be paid by said company for the maintenance of the relief department, the acceptance of benefits from said relief fund for injury or death shall operate as release and satisfaction for all claims for damages against said company arising directly or indirectly from such injury or death, which could be made by him or his legal representative."

The supreme court, upon these facts, say:

"By mutual contributions of the members and the company, a fund is provided, and is available to a member injured by the company, whether in a way to render it liable for damages or not. The member, in his contract, agrees with the company that, in consideration of its contributions to the fund, if he is injured, he will not take the benefit thus provided and besides ask for damages because of the injury. But he has his election which he will take. Such a contract fixes his rights as a member of the relief department; that is, upon what terms he may receive payment from the department. It is purely defensive matter, arising upon contract, and does not go to the jurisdiction of the court. * * * But such a contract is said to be against public policy. We do not see why. It is not a contract by which the company can escape a legal liability for its torts. The way is entirely open for the prosecution of any claim for negligence against the company, and damages are obtainable to the full amount of the injury sustained.

There is no phase of public policy that prohibits a person agreeing that such full compensation, or whatever he may accept as a compensation, shall be in lieu of any claim he might otherwise have against the relief fund. It seems to be the thought inducing the contract that the company shall not be compelled to pay damages for the injuries sustained and also to contribute to a fund for additional relief. Such an agreement seems not only not against public policy, but it seems not inequitable."

The case of Fuller v. Association, reported in 67 Md. 433, 10 Atl. 237, is a case much stronger than any yet referred to. According to the regulations of the Baltimore & Ohio Railroad, all its employés are compelled to become members of the relief association. The court says:

"The company makes it compulsory upon all its employés of certain classes and physical conditions to become members of the relief association, and to contribute so much a month out of their wages to create a fund for the benefit of the injured and sick. Members of the association who are injured while in the service of the company, whether the injury be caused by the negligence of the company or not, are entitled to a certain sum, graded according to class, etc. The benefit which the company expected to derive from the association, or, at least, the principal benefit which it expected, was immunity from suits by its employés where they were injured, or supposed they were, by the negligence of the company. The benefit which members of the association especially derived from it is that they are paid a certain sum where the accident is not the result of the company's negligence. The company does not pretend to exact from its employés, the members of the association, an agreement not to sue it for negligence; but, by the third section of the constitution, assented to by each employé upon becoming a member, it does exact from them an agreement not to claim the benefit of the relief fund if they prefer to sue. * * * Nor can we see that this third clause of the constitution is so unreasonable that the court can declare it void. The occupation of many of the employés of a railroad is especially hazardous. Accidents are constantly happening to them without fault on the part of the company that employs them, and in such cases they can have no redress except from an insurance. A compulsory insurance may at first seem harsh; but an insurance to some extent by general consent is deemed advisable, especially for those who have others dependent upon their daily labor. The provision against the double benefit and executing the release is one not unreasonable for the company to make, interested, as it is, as a guarantor and in other ways. The employés have a right to decline the service of the company under such conditions; but if they accept it, knowing the conditions, they are bound by them, unless these conditions are so unreasonable that a court can pronounce them void."

Judge Sage, in the United States circuit court, in the case of Owens v. Railway Co., 35 Fed. 715, and Judge Bond, in the United States circuit court for West Virginia, in the case of Martin v. Railroad Co., 41 Fed. 125, both held contracts similar to that now under consideration to be valid and binding upon the employé.

In view of these authorities, and of the reasons given in support of the conclusions reached, I feel justified in holding the contract in this case valid and binding upon the plaintiff.

The next question to be determined is whether the act of 1890 of Ohio is constitutional. The latter part of the first section of said act reads as follows:

"And no railroad company, insurance company, or association of other persons shall demand, expect, require or enter into any contract, agreement or stipulation with any other person about to enter, or in the employment of any railroad company, whereby such person stipulates or agrees to surrender, or waive any right to damages against any railroad company there-

after arising from personal injury or death, or whereby he agrees to surrender or waive, in case he asserts the same, any other right whatsoever, and all such stipulations or agreements shall be void."

This act has been declared unconstitutional in the case of Cox v. Railway Co., 33 Ohio Law J., April 22, 1895, in a well-considered opinion by Judge Dilatush, of the Warren county court of common pleas; and the court reaches that conclusion because said act violates section 1, art. 1, of the bill of rights, as interfering with the rights of private contract. That provision of the bill of rights is as follows:

"All men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and defending property, and seeking and obtaining happiness and safety."

Article 2, § 26, of the constitution of Ohio, provides:

"All laws of a general nature shall have uniform operation throughout the state."

The act under consideration, while it is general in its nature, applies only to railroad companies and their employés, and is not, therefore, general in its application, and does not operate uniformly on all classes of citizens. Under this statute, railroad companies are prohibited from making contracts which other corporations in the state are allowed to make.

Article 1, § 10, of the constitution of the United States prohibits any state from passing any law impairing the obligation of contracts.

Article 8, § 16, of the bill of rights of the state of Ohio prohibits making any law impairing the obligation of contracts.

Article 2 of the North Western Territorial Government (1787) provides as follows:

"In the just preservation of rights and property, it is understood and declared that no law ought ever to be made or have force in said territory that shall in any manner interfere with or affect private contracts or engagements bona fide without fraud, previously made."

This extract from the ordinance of 1787 shows how jealously the right of personal liberty in the making of private contracts was regarded, and how carefully any restriction of said right was restrained.

The act under consideration is certainly one which impairs the rights of a large number of the citizens of Ohio to exercise a privilege which is dear to all persons, namely, that of making contracts concerning their own labor and the fruits thereof, and, so far as it relates to such contracts already made, impairs their validity. The act seems to assume that a large class of the citizens of the state, namely, those employed by railroad corporations, are incapable of making contracts for their own labor.

As hereinbefore stated, this contract shows on its face, not only that no unfair advantage is taken of these employés, but that the contract, in its broadest and fullest sense, is a beneficent one, intended for their protection and assistance. If in some cases it proves unsatisfactory to the employé insured, that is in itself no evidence that the contract is of an unconscionable nature, or unfair in its provisions.

Neither is it a sufficient pretext to assume that all such contracts need the supervision of the legislative body, or that so large a class of citizens should be restricted in their right of personal liberty. The fact is brought to the attention of the court, by current official publications, that the Voluntary Relief Department of the Pennsylvania Lines West of Pittsburgh embraces within its voluntary membership a large majority of its many thousand employés, who are satisfied with their contracts relative to the organization; and the fact that it grows in numbers after years of trial is evidence that it is acceptable to those who belong, but who may at any time withdraw. Of the 25,720 employés on said lines, 15,528 voluntarily belong to this relief department. The aggregate disbursements for benefits in the year 1895 was $251,624.25. In the 6½ years of its existence, but 1,024 members have withdrawn from the organization, and the total disbursements for benefits during that period have been $1,474,948.72.

The supreme court of Missouri has been recently called upon to pass upon a statute which was clearly class legislation of a similar character to that under consideration. The legislature of that state, on the 6th of March, 1893, passed a statute making it unlawful for an employer to prohibit an employé from joining, or requiring an employé to withdraw from, a trade or labor union or other lawful organization. The statute further made any violation of the provisions of the act punishable by a fine of not less than $50 or more than $1,000, or imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment. The supreme court of Missouri held this act to be in violation of the fifth amendment of the constitution of the United States, and of the second article of the constitution, declaring that "no one shall be deprived of life, liberty or property, without due process of law," and in contravention of the first article of the fourteenth amendment of the constitution of the United States, prohibiting any state from depriving any person of life, liberty, or property without due process of law. The court further held the said act to be unconstitutional, as being special legislation. The opinion of the court is very elaborate and very carefully considered. I quote from it as follows, viz.:

"In the federal constitution, it will be noted that the rights of life, liberty, and property are grouped together in the same sentence. They constitute a trinity of rights, and each, as opposed to any unlawful deprivation thereof, is of equal constitutional importance. * * * These terms, 'life,' 'liberty,' and 'property,' are representative terms. and cover every right to which a member of the body politic is entitled under the law. Within their comprehensive scope are embraced the right of self-defense, freedom of speech, religious and political freedom, exemption from arbitrary arrests, the right to buy and sell as others may,—all are liberties, personal, civil, and political; in short, all that makes life worth living; and of none of these liberties can any one be deprived except by due process of law." State v. Julow (Mo. Sup.) 31 S. W. 781.

The court then further holds that to deny a citizen the right to make free and valid contracts for his labor is to deprive him of "liberty, without due process of law"; and that any statute which undertakes to make such an act, otherwise innocent and lawful, a criminal

offense, constitutes "legislative judgment," without trial or sentence, and that any such legislation is unconstitutional and void. The court further finds the statute there under consideration unconstitutional, because it is class legislation,—because it is a statute which undertakes to regulate the rights and conduct of one class of citizens, without reference to all other classes. Though no law of Ohio of this character is involved in this controversy, applying the principles of this Missouri decision to the statute of Ohio which is in question in this case, we find it vulnerable in the same two respects in which the Missouri statute was declared void. The Ohio statute, in denying to the employés of a railroad corporation the right to make their own contracts concerning their own labor, is depriving them of "liberty," and of the right to exercise the privileges of manhood, "without due process of law." Being directed solely to employés of railroads, it is class legislation of the most vicious character. Laws must be not only uniform in their application throughout the territory over which the legislative jurisdiction extends, but they must apply to all classes of citizens alike. There cannot be one law for railroad employés, another law for employés in factories, and another law for employés on a farm or the highways. Class legislation is dangerous. Statutes intended to favor one class often become oppressive, tyrannical, and proscriptive to other classes never intended to be affected thereby; so that the framers of our constitution, learning from experience, wisely provided that laws should be general in their nature and uniform throughout the state.

For the reasons stated, I am of the opinion—First, that the contract set out in the defendant's answer is a valid contract; and, second, that the act of the legislature of Ohio which declares it to be void and invalid is unconstitutional. The demurrer to the answer is therefore overruled.