JONES et al. v. GREAT SOUTHERN FIREPROOF HOTEL CO. et al.

(Circuit Court, S. D. Ohio. April 6, 1897.)

1. FEDERAL COURTS—BINDING EFFECT OF STATE DECISIONS.
   The rule that the decision of the highest court of a state passing upon the validity of a state statute under the state constitution is binding upon the federal courts will not be applied in cases involving rights which arose under the statute prior to the decision of the state court; and the federal court will exercise an independent judgment.

2. CONSTITUTIONAL LAW—STATUTORY LIEN OF SUBCONTRACTOR.
   A state statute (Rev. St. Ohio, § 3185a) giving subcontractors a lien without regard to the state of the account between the owner of the building and the principal contractor, and which, in effect, requires the owner to pay to the subcontractor in money, in order to discharge his lien, although he may have contracted with the principal to pay him by the trans-

fer of property, interferes with the right of the owner to make his own contracts, and is unconstitutional.

3. FEDERAL COURTS—CONFLICTING STATE DECISIONS.

The rule that, where there are conflicting decisions of a state court as to the construction or validity of a state statute, the early decisions will be followed by the federal courts as to all rights accruing under them before the last decision, has no application where the later decision is under an amendment of the statute, constituting it a radical departure from previous legislation.

This was a suit in equity brought by Benjamin F. Jones and others against the Great Southern Fireproof Hotel Company and others to foreclose a mechanic's lien asserted by the complainants as subcontractors.

Outhwaite & Linn, for plaintiffs.

Ricketts, Black, Souffer, Mash & Lenz and Booth, Keating & Curtis, for defendants.

SAGE, District Judge. The complainants sue to foreclose a mechanic's lien asserted by them, as subcontractors, upon the hotel building of the respondent the Great Southern Fireproof Hotel Company, for certain materials furnished towards the erection of said building between the 16th of April, 1895, and the 29th of January, 1896, under and by virtue of a written contract by and between them and William J. McClain, principal contractor for said company in the erection of its building. The lien is asserted under and by virtue of section 3184, St. Ohio, as amended, and section 3185 of the Revised Statutes as supplemented, April 13, 1894 (91 Ohio Laws, 135). Section 3184 provides that "a person who performs labor, or furnishes machinery or material for constructing, altering or repairing" any structure mentioned in the section, including a house, mill, manufactory, or other building, "by virtue of a contract with, or at the instance of the owner thereof or his agent, trustee, contractor or sub-contractor, shall have a lien to secure the payment of the same upon such" house, mill, manufactory or other building, "and upon the interest, lease-hold or otherwise, of the owner in the lot or land, on which the same may stand or to which it may be removed."

The supplement to section 3185, designated as 3185a, provides that "in all cases where the labor, material or machinery referred to in sections 3184 and 3185, shall be furnished by any person other than the original contractor with such owner, or his agent, or trustee, the lien shall not exceed the actual value of the labor, material or machinery so furnished, and the aggregate amount of liens for which the property may be held shall not, in the absence of fraud or collusion between the owner and original contractor, exceed the amount of the price agreed upon between the owner and original contractor for the performing of such labor and the furnishing of such material and machinery. Provided, if it shall be made to appear that the owner and contractor, for the purpose of defrauding sub-contractors, material-men, or laborers, fixed an unreasonably low price in the original contract for any work or material for which a lien is given under section 3184, the court

shall ascertain the difference between such fraudulent contract price and a fair and reasonable price therefor, and such sub-contractors and material-men and laborers shall have a lien to the amount of such fair and reasonable price so ascertained."

Section 3185 provides that "such person, in order to obtain such lien, shall, within four months from the time of performing such labor, or furnishing such machinery or material, file with the recorder of the county where the labor was performed, or the machinery or material furnished, an affidavit containing an itemized statement of the amount and value of such labor, machinery, or material," and other items and particulars not necessary to be here quoted, "and the same shall be recorded in a separate book to be kept therefor, and shall operate as a lien from the date of the first item of the labor performed, or the machinery or material furnished upon or toward the property designated in the preceding section, and the interest of the owner in the lot or land on which the same may stand, or to which it may be removed, for six years from and after the date of the filing of such attested statement. If an action be brought to enforce such lien within that time the same shall continue in force until the final adjudication thereof; and there shall be no homestead or other exemption against any lien under the provisions of this chapter."

The respondents demur to the bill for insufficiency. The demurrer was argued solely upon the question of the constitutionality of the act of April 13, 1894; there being no objection to the bill on other grounds. The supreme court of Ohio, in Young v. Hardware Co., 45 N. E. 313, held that the act of April 13, 1894, "in so far as it gives a lien on the property of the owner to subcontractors, laborers, and those who furnish machinery, material, or tile to the contractor, is unconstitutional and void. All to whom the contractor becomes indebted in the performance of his contract are bound by the terms of the contract between him and the owner." Much time in the argument was given to the discussion of the proposition that this court should follow that decision, without examining into the merits of the question, and that proposition is elaborately presented in the brief for the respondents. The material was furnished and delivered by complainants, and used in the construction of the hotel of respondents, before the decision of Young v. Hardware Co. was announced. In Burgess v. Seligman, 107 U. S. 32, 2 Sup. Ct. 21, the supreme court of the United States said:

"When contracts and transactions have been entered into and rights have accrued thereon, under a particular state of the decisions, or when there has been no decision of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts, if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with well-considered decisions of the state

courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states, in controversies between citizens of different states, was to constitute independent tribunals, which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

In Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, the supreme court said:

"That the decision of the highest court of a state, construing the constitution of the state, is not binding upon this court, as affecting the rights of citizens of other states in litigation here, when it is in conflict with previous decisions of this court, and when the rights which it affects here were acquired before it was made."

To the same effect is Anderson v. Santa Anna Tp., 116 U. S. 356, 6 Sup. Ct. 413. In Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296, the circuit court of appeals of this circuit held that:

"Where a contract or obligation has been entered upon before there has been any judicial construction of the state statute upon which the contract or obligation depends, by the highest court of the state, a federal court, obtaining jurisdiction of the question touching the validity, effect, or obligation of such a contract, will, while leaning to an agreement with the state court, exercise an independent judgment as to the validity and meaning of such contract, and will not necessarily follow opinions of the state court construing such statute, if such decisions be rendered after the rights involved in the controversy originated."

Counsel for respondents attempt to distinguish these cases, and especially Louisville Trust Co. v. City of Cincinnati, from the case now under consideration, but I am not able to see that there is any material difference. It is true that in Louisville Trust Co. v. City of Cincinnati the question was whether the statute was applicable, and not whether it was valid. The gist of the federal cases cited is that, under the circumstances stated, the federal courts will not apply the ordinary rule that the decision of the highest court of a state, construing or passing upon the validity of a state statute, is binding. It will be necessary, therefore, to look into the question of the constitutionality of the statutory provisions involved, independently of the decisions made by the supreme court of Ohio.

Section 3184, as amended, purports to give to a subcontractor a lien on the house, mill, manufactory, or building, to secure the payment of his claim for labor, machinery, or material. By section 3185a this lien is not to exceed the actual value of such labor, machinery, or material; and the aggregate amount of liens is not, in the absence of fraud or collusion between the owner and original contractor, to exceed the amount of the price agreed upon between them for the performing of such labor and the furnishing of such material or machinery. These provisions are made irrespective of the state of the account between the owner of the building and the principal contractor. The owner may have paid in advance according to the terms of his contract, and, if so, he must, according to the statute, pay in addition the amount of the subcontractor's lien. If his contract with the principal contractor provide for payment, not in

money, but by the transfer of property, as land, he must nevertheless pay in money to the subcontractor, in order to discharge his lien, the full amount thereof.   It is my opinion that the supreme court of Ohio rightly held that this provision is an interference with the vested right of the owner to contract for his building upon the best terms possible, and that "if he can, by making a contract to pay in advance, or by exchange of securities or other property, acquire his building cheaper than by contracting to pay after four months from its completion, he has the inalienable right to so acquire it, and to be protected in its enjoyment; and it is not within the power of the general assembly to compel him to pay a higher price for his building, for the protection of laborers and furnishers with whom he has no contractual relation." This view is supported by the statement of the law in Overt. Liens, § 553, and by the following authorities: The supreme court of Pennsylvania, in Waters v. Wolf, 162 Pa. St. 153, 29 Atl. 646, held that a statutory provision which made the written consent of the subcontractor necessary, in order to bind him by a stipulation in the contract between the original contractor and the owner that no mechanics' liens should be filed, was unconstitutional, in that it attempted to create a debt and give a lien therefor, against the express covenant in the contract; also, that a provision that the contractor should be the agent of the owner in ordering work or materials, and that any subcontractor doing work or furnishing materials should be entitled to a lien, notwithstanding any stipulations to the contrary in the contract between the owner and the contractor, unless such stipulation should be consented to by the subcontractor, was unconstitutional, because it attempted to frame a new contract and substitute it for the one made by the parties.   The court said that the indefeasible right to acquire and possess property, and the right of freedom of contract in the acquisition and protection of property, necessarily included the right to make reasonable contracts for the improvement of property, and that a contract that no mechanics' liens should be filed was not unreasonable, as to either contractor or subcontractor.   In Stewart v. Wright, 52 Iowa, 335, 3 N. W. 144, the court said:

"If one should contract with a builder to erect a house, and agree to pay him in advance, and comply with his contract by making the payments, we very much question whether it is within the power of the legislature to require that he shall be liable to pay for his building twice, by paying off claims of subcontractors who may assert liens after the payments have been made."

To the same effect, see John Spry Lumber Co. v. Sault Sav. Bank, Loan & Trust Co., 77 Mich. 199, 43 N. W. 778, where the court said:

"That a mechanic's lien law enacted for the sole purpose of enabling strangers to the title to land to subject it to sale for obligations to which the owner never became bound, and in which he has no part whatever, is unconstitutional, and leaves the law as it was before its passage."

That decision was quoted and followed in Mellis v. Race, 78 Mich. 80, 43 N. W. 1033; Snell v. Race, 78 Mich. 334, 44 N. W. 286.   The supreme court of Minnesota, in Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, declared that, as liens are incumbrances upon the owner's property—

"It is fundamental that they can only be created by his consent or authority. No man can be deprived of his property without his consent, except by due process of law. The basis of the right to enforce a claim as a lien against property is the consent of the owner, and it is upon this principle alone that laws giving liens to subcontractors are sustained."

It is true that in Mallory v. La Crosse Abattoir Co., 80 Wis. 182, 49 N. W. 1071, a statute similar to the Ohio statute under consideration was, by a divided court, held constitutional; but I am forced to the conclusion that the dissenting opinion in that case is the better statement of the law. See, also, Henry v. Rice, 18 Mo. App. 512; Renton v. Conley, 49 Cal. 187, where a statute similar to the Ohio statute was held invalid because it sought to hold the property for more than the contract price. There are decisions to the contrary, as cited in brief for complainants, but they only serve to emphasize the statement of the court in Burgess v. Seligman, Anderson v. Santa Anna Tp., and Louisville Trust Co. v. City of Cincinnati, supra, that it is the duty of the federal court to lean to an agreement with the state court, especially in cases of doubt. The reasoning of the cases which declare statutes of the same character as the Ohio statutes invalid is, in my judgment, to be preferred to that of the courts which uphold such laws.

Counsel for the complainants cite Winder v. Caldwell, 14 How. 434, and Purinton v. Hull of a New Ship, 2 Curt. 416, Fed. Cas. No. 11,472, as federal decisions where a statute similar to the one complained of in this case was enforced. Those cases were decided on other points. In neither of them was the constitutionality of the act questioned by counsel or considered by the court. Cases are also cited for complainants which sustain the proposition that statutory liens may be created in favor of subcontractors. This proposition, generally stated, is undeniable. So long as such a statute does not interfere with the right of the owner to make contracts, there can be no question as to its validity. A lien law which only provides a statutory subrogation, and protects the same by a lien, only enacts and secures an equity, and to such an enactment the owner of the property covered by the lien can make no valid objection. But in the case now under consideration the objection is that the owner's right to make his own contracts is interfered with, and the objection is well taken.

Reference is made by counsel for complainants to decisions by the supreme court of Ohio prior to that announced in Young v. Hardware Co., in cases which they claim involved the same principle of constitutional construction, and which are in conflict with that opinion. They urge that under these decisions, and under the law as understood and adjudicated then and until after the complainants' materials herein were furnished, the act complained of must necessarily have been held constitutional. Their proposition is that under such circumstances the rule is clear, not only that the United States court, in a case within its jurisdiction, will act independently, but that, if it finds that decisions do so conflict, it will follow the early decisions as to all rights accruing under them before the last decision. In support of this proposition, they cite Douglass v. Pike Co., 101 U. S. 677. But in that case the prior decisions were made

under the same act. Here the decision in Young v. Hardware Co. is the first and only decision by the supreme court under the act. In Douglass v. Pike Co. the supreme court said:

"After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself; and a change of decision is, to all intents and purposes, the same, in its effect on contracts, as an amendment of the law by means of a legislative enactment."

But here the case arises under an amendment of the law, and not under a change of decision. Moreover, the amendment is a departure from all previous legislation by the state of Ohio upon the subject. Counsel admit that there was no adjudication in Ohio of the exact point decided in Young v. Hardware Co. prior to that case, but they insist that the principles involved had been settled in many cases which were in effect, if not in words, overruled by that decision. Without stopping to cite and comment upon the cases referred to in support of this contention, it is sufficient to say that their view, if adopted, would extend the rule laid down in Douglass v. Pike Co. beyond all precedent. The demurrer will be sustained, and the bill and the cross bill of the respondents Sesman and Landis, to which also a demurrer for insufficiency was filed upon the same ground as those urged in support of the demurrer to the bill, will be dismissed.