Street *v.* Varney Electrical Sup. Co.

## STREET *v.* THE VARNEY ELECTRICAL SUPPLY COMPANY.

[No. 19,802.    Filed April 1, 1903.]

CONSTITUTIONAL LAW.—*Minimum Wage Law.*—*Work and Labor.*—The minimum wage law (§§7055a, 7055b Burns 1901), fixing a minimum rate of wages to be paid unskilled labor employed upon any public work of the State, counties, cities, and towns, is unconstitutional, being violative of §1 of the fourteenth amendment of the federal Constitution and also §§1 and 23 of article 1 of the state Constitution.

From Wayne Circuit Court; *H. C. Fox*, Judge.

Action by Frank L. Street against the Varney Electrical Supply Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*S. C. Whitesell*, for appellant.

*R. T. MacFall, M. W. Hopkins* and *Wilfred Jessup*, for appellee.

DOWLING, J.—The only question for decision on this appeal is the constitutionality of the act of March 9, 1901 (Acts 1901, p. 282, §§7055a, 7055b Burns 1901), commonly called the minimum wage law. It is raised by a demurrer to the complaint for want of facts, and the ruling of the court sustaining the same.

The material averments of the complaint are these: The appellee the Varney Electrical Supply Company is a private domestic corporation; the city of Richmond is a municipal corporation organized under the general laws of this State; between October 1, 1901, and January 16, 1902, the appellee was engaged in constructing, as one of the public works of said city, an electric light plant, to be used in lighting the public streets, highways, and other public places of said city; the said work was done under a contract between the Varney Electrical Supply Company and the said city of Richmond; the appellant during said

period performed work and labor as an unskilled laborer at the request of the appellee the Varney Electrical Supply Company by digging holes in which to place the poles of the electric light plant, and in shaving poles; he so labored for 540 hours, and was entitled to receive twenty cents per hour for such labor; the Varney Electrical Supply Company refused to pay him twenty cents per hour, on the ground that the statute fixing the minimum wages for such labor at that rate was unconstitutional, and the appellant was paid fifteen cents an hour for his said labor; upon these facts the appellant demands judgment for $54, the penalty given by the statute, and $300 for his attorney's fees.

The statute upon which the action is founded is as follows: "Section 1. That from and after the passage of this act, unskilled labor employed upon any public work of the State, counties, cities, and towns, shall receive not less than twenty cents an hour for said labor, which may be enforced in a proper action, and in case a suit shall be necessary for the recovery of the compensation herein provided for, and where the compensation is recovered, the person suing shall recover also a reasonable attorney's fee, together with a penalty not exceeding double the amount of wages due: Provided, that boards of commissioners, common councils of towns or cities are prohibited from making contracts with such laborers by the week, or any definite length of time wherein a price is agreed upon at a rate less than as provided herein. Section 2. Any contractor or other person in charge of public work of the State, counties, cities or towns, whose duty it is to contract with, employ and pay the unskilled labor on such public work, who shall violate the provisions of §1 of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not exceeding $10, to which may be added imprisonment in the county

jail not exceeding thirty days." §§7055a, 7055b Burns 1901.

Some of the objections taken to the statute by the appellee are that it unlawfully abridges the privileges and immunities of the citizen; that it deprives persons of liberty and property without due process of law; that it denies to a large class of citizens the equal protection of the law; that it grants to a class of citizens privileges and immunities which, upon the same terms, do not equally belong to all citizens; and that it impairs the obligations of contracts. All these objections are founded upon the provisions of the federal and state Constitutions, and it is insisted by the appellee that the act is therefore unconstitutional and void. These propositions are denied by the appellant. He claims that the statute does not restrict the liberty of contract, and that its enactment was a legitimate exercise of the police power of the State.

The provisions of the Constitution of the United States alleged to be violated by the statute are those contained in §1 of the fourteenth amendment, which prohibits the State from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States, and from depriving any person of life, liberty, or property without due process of law, or denying to any person within its jurisdiction the equal protection of the law. The provisions of the state Constitution supposed to be involved here are found in §1, article 1, which declares that all men are endowed with certain unalienable rights, and that among them are life, liberty, and the pursuit of happiness; and in §23, article 1, which forbids the granting by the General Assembly to any citizen or class of citizens of privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

The act of March 9, 1901 (Acts 1901, p. 282), undertakes to fix the minimum rate of compensation to be paid to a particular and limited class of laborers employed upon

any public work of the State, counties, cities, and towns, without regard to the actual value of such labor, or the rate paid by other persons, natural or artificial, for the same kind of labor in the same vicinity. It prohibits boards of commissioners and common councils of cities from making contracts with unskilled laborers by the week, or for any definite length of time, wherein a price is agreed upon at a rate less than the compensation fixed by the statute. Its restrictions reach beyond the State, counties, cities, and towns, and extend to any contractor or other person in charge of any public work whose duty it is to contract with, employ, and pay any unskilled laborer employed on such work. It not only imposes a penalty, but punishes by fine and imprisonment any contractor or other person in charge of public work of the State, counties, cities, or towns, whose duty it is to employ and pay unskilled labor on such public work, who contracts with any unskilled laborer for a rate of compensation for his services less than twenty cents per hour. It is not contended, and it could not be maintained, that the restrictions in this act upon the right of contract would be valid if the act applied to the work and affairs of private citizens. Even if no express provision of any constitution forbade such legislative interference with the right of contract, it would be void for the reason that the authority to fix by contract the prices to be paid for property, including human labor, is not ordinarily within the domain of legislation. But such enactments are also held to be in violation of §1, article 1, of the state Constitution, securing to every citizen of the State the inalienable right to personal liberty and to the pursuit of happiness.

But it is argued in support of the validity of the act that no specific provision of the federal or state Constitution inhibits this species of legislation, and that counties, cities, and towns are mere political and municipal subdivisions of the State, through which the government is administered. It is said that the State has the power to fix the salaries of

its officers, and the wages it will pay to its agents and employes; therefore it has the right to declare what rate of wages shall be paid to the agents and employes of a county, city, or town employed upon any public work.

While the counties, cities, and towns are political and municipal subdivisions of the State, they are not governmental agencies in such sense as to subject the management of their local affairs, involving the making of contracts for labor and materials to be used upon local improvements, and the payment for the same out of the revenues of the county, city or town, to the arbitrary and unlimited control of the legislature. They are corporations as well as political and governmental subdivisions and agencies, and, as such corporations, they have the power to make contracts by which the rate of compensation for property sold to them is fixed. With regard to such contracts for the purchase of property or the employment of labor, counties, cities, and towns stand much upon the same footing as private corporations; and they can not be compelled by an act of the legislature to pay for any species of property more than it is worth, or more than its market value at the time and in the place where it is contracted for. The power to confiscate the property of the citizens and taxpayers of a county, city, or town, by forcing them to pay for any commodity, whether it be merchandise or labor, an arbitrary price, in excess of the market value, is not one of the powers of the legislature over municipal corporations, nor the legitimate use of such corporations as agencies of the State. If an act compelled counties, cities, and towns to pay to all stone masons not less than $2 per perch for stone to be used on any public work, when the market price of stone was but $1.50 per perch, or to the brickmaker not less than $12 per thousand for brick, when brick of the same quality could be bought for $10 per thousand, or to the hardware merchant not less than six cents per pound for iron, when iron of the same quality could be had for four cents per

pound, such legislation would shock every reasonable mind, and would be universally condemned as unwarranted and unconstitutional. For the same reasons, an act fixing the price of unskilled labor on all public works at not less than twenty cents an hour is a legislative interference with the liberty of contract by counties, cities, and towns, which finds no sanction or authority in the doctrine that counties, cities, and towns are municipal and political subdivisions of the State.

In the very recent case of *People, ex rel.,* v. *Coler,* 166 N. Y. 1, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. 605, the court of appeals of New York, in considering the question, said,—O'Brien, J., delivering the opinion of the court: "The legislature does not possess unrestricted power to bind a city hand and foot with respect to all its local business affairs. It can not fix by statute the price which it must pay for materials or property that it may need, or the compensation that it must pay for labor or other services that it may be obliged to employ, at least when such regulations increase the cost beyond that which it would be obliged to pay in the ordinary course of business. If it could do all these things, it could virtually dispose of all the revenues of the city for such purposes as it thought best, and local self-government would be nothing but a sham and a delusion. * * * The right which is conceded to every private individual and every private corporation in the state to make their own contracts and their own bargains is denied to cities and to contractors for city work; and, moreover, if the latter attempt to assert such right the money earned on the contract is declared to be forfeited to the city without the intervention of any legal process or judicial decree. The exercise of such a power is inconsistent with the principles of civil liberty, the preservation and enforcement of which was the main purpose in view when the constitution was enacted. If the legislature has power to deprive cities and their contractors of the right to

agree with their workmen upon rates of compensation, why has it not the same power with respect to all private persons and all private corporations? That question can be answered in the language which this court used when a case with features somewhat similar was under consideration: 'Such legislation may invade one class of rights to-day and another to-morrow, and if it can be sanctioned under the constitution, while far removed in time we will not be far away in practical statesmanship from those ages when governmental prefects supervised the building of houses, the rearing of cattle, the sowing of seed and the reaping of grain, and governmental ordinances regulated the movements and labors of artisans, the rate of wages, the price of food, the diet and clothing of the people, and a large range of other affairs long since in all civilized lands regarded as outside of governmental functions.' *In re Jacobs,* 98 N. Y. 98. * * * The power to deprive master and servant of the right to agree upon the rate of wages which the latter was to receive is one of the things which can be regarded as impliedly prohibited by the fundamental law upon consideration of its whole scope and purpose as well as the restrictions and guaranties expressed."

In discussing the proposition that the several municipal governments of the state are not in themselves independent and sovereign, but are subdivisions of the general government, created by it with enumerated powers, and possessing none except such as may be fairly drawn from their charters, the supreme court of Ohio, in *City of Cleveland* v. *Clements Bros., etc., Co.,* 67 Ohio St. 197, 65 N. E. 885, said: "The fallacy of this contention lies in the assumption that the compulsory authority of the legislature over municipal corporations is so absolute and arbitrary that it may dictate the specific terms upon which such municipality shall contract, and may prescribe what stipulations and conditions its contracts shall contain, although such contracts may, as in this case, relate only to matters of pure-

ly local improvement. This is a misapprehension of the legislative authority, for no such right or power has been delegated to, or is possessed by, the general assembly."

The liberty to contract, subject only to such limitations as may be imposed by the legislature in the legitimate exercise of the police power for the public welfare, is not only secured by the Constitution of this State, but is undoubtedly within the protection of the federal Constitution also, and is covered by the fourteenth amendment thereof, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Const. U. S., 14th Amendment, §1; *In re Jacobs,* 98 N. Y. 98, 50 Am. Rep. 636; *People* v. *Marx,* 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34; *Powell* v. *Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253; *Hooper* v. *California,* 155 U. S. 648, 662, 15 Sup. Ct. 207, 39 L. Ed. 297; *Bailey* v. *People,* 190 Ill. 28, 60 N. E. 98, 54 L. R. A. 838, 83 Am. St. 116; *Kuhn* v. *Common Council,* 70 Mich. 534, 38 N. W. 470; *People* v. *Rosenberg,* 138 N. Y. 410, 416, 34 N. E. 285; *People, ex rel.,* v. *Coler,* 166 N. Y. 1, 21, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. 605; *Palmer* v. *Tingle,* 55 Ohio St. 423, 45 N. E. 313. Corporations, both private and public, are entitled to the benefit of this provision for the preservation and protection of their right to make contracts affecting their local affairs. *In re Tiburcio Parrott,* 1 Fed. 481; *Butchers' Union, etc., Co.* v. *Crescent City, etc., Co.,* 111 U. S. 746, 764, 4 Sup. Ct. 652, 28 L. Ed. 585; *Blythe* v. *State,* 4 Ind. 525; *Board, etc.,* v. *Pollard,* 153 Ind. 371; *Smyth* v. *Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

If the legislature has the right to fix the minimum rate of wages to be paid for common labor, then it has the power to fix the maximum rate. And if it can regulate the price of labor, it may also regulate the prices of flour, fuel, mer-

ch'andise, and land. But these are powers which have never been conceded to the legislature, and their exercise by the State would be utterly inconsistent with our ideas of civil liberty. Among the most odious and oppressive laws ever enacted by the English parliament, in the worst of times, were the statutes of labor of .Henry VI and Edward IV. These enactments fixed a maximum rate of wages for the laboring man, prohibited him from seeking employment outside of his own country, required him to work for the first employer who demanded his services, and punished every violation of the statutes with severe penalties. ' In the very nature and constitution of things, legislation which interferes with the operation of natural and economic laws defeats its own object, and furnishes to those whom it professes to favor few of the advantages expected from its provisions. The circumstances that the act of March 9, 1901 (Acts 1901, p. 282) reverses the conditions of the statutes of labor of Henry VI and Edward IV, and lays the burden and the penalty upon the employer instead of the laborer, does not render it any less pernicious and objectionable as an invasion of natural and constitutional rights. Statutes similar to this have been before the courts of other states, and in nearly every instance have been held unconstitutional. *People, ex rel.,* v. *Coler, supra; State, ex rel.,* v. *Norton,* 5 Ohio N. P. 183; *Commonwealth* v. *Perry,* 155 Mass. 117, 28 N. E. 1126, 14 L. R. A. 325, 31 Am. St. 533; *Ramsey* v. *People,* 142 Ill. 380, 32 N. E. 364, 17 L. R. A. 853; *Jones* v. *Great Southern, etc., Hotel Co.,* 79 Fed. 477; *Slate* v. *Julow,* 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. 443; *Shaver* v. *Pennsylvania Co.,* 71 Fed. 931; *Atkins & Co.* v. *Town of Randolph,* 31 Vt. 237; *Palmer* v. *Tingle,* 55 Ohio St. 423, 45 N. E. 313; *City of Cleveland* v. *Clements Bros., etc., Co.,* 67 Ohio St. 197, 65 N. E. 885.

The statute of March 9, 1901, is obnoxious to the further objection that through its operation a citizen may be de-

prived of his property without due process of law. If the minimum price to be paid by municipal subdivisions of the State for unskilled labor on public works exceeds the rate at which such labor can be obtained by other persons at the same place, then the excess so paid for labor on public improvements is taken from the citizens assessed for such works, not by due process of law, but by a mere legislative fiat. The citizens of the State, who must, through assessments made upon their property, pay for the public works of counties, cities, and towns, are entitled to have such work done at such rate of wages as the local agents and official representatives of such municipal subdivisions of the State may be able to secure by contract. They can not be required arbitrarily to pay higher wages than laborers employed on private works or improvements in their particular district demand, any more than they could be compelled by similar legislation to pay a minimum rate of wages to laborers employed by them in their private business. If the minimum rate fixed by the statute exceeds the market value of such wages, the excess is a mere donation exacted under color of law from the citizens liable to assessment for the public improvement, and bestowed upon the unskilled laborer. Public revenues can not be applied in this way. *McClelland* v. *State, ex rel.,* 138 Ind. 321; *State, ex rel.,* v. *City of Indianapolis,* 69 Ind. 375, 35 Am. Rep. 223; *Warner* v. *Curran,* 75 Ind. 309.

Lastly, we think the statute obnoxious to the objection of class legislation. In fixing the minimum rate of wages to be paid for unskilled labor to be employed by counties, cities, and towns, on public improvements, a classification is made which is unnatural and unconstitutional. The laboring men of the State may, for some purposes, constitute a class concerning which particular legislation may be proper. This classification has been recognized and sustained in statutes requiring the payment of wages in lawful money of the United States, forbidding the assignment of

future and unearned wages, and in similar acts. But no legal and sufficient reason can be assigned for placing unskilled labor in a class by itself for the purpose of fixing by law the minimum rate of wages at which it shall be employed by counties, cities, and towns on their public works. Why exclude the skilled mechanic from the benefit of the act? Why compel the payment of a higher rate of wages to the unskilled laborer than may be demanded by the skilled mechanic for more difficult and important work, requiring special training, experience, and a higher degree of intelligence? Unless the legislature has the power to fix the minimum rate of wages to be paid by counties, cities, and towns to carpenters, stone-masons, bricklayers, plumbers, and painters employed on local improvements, treating each trade as a separate class, it has not the power to enact laws fixing the compensation of unskilled laborers employed on similar works. No sufficient reason has been assigned why the wages of the unskilled laborer should be fixed by law and maintained at an unalterable rate, regardless of their actual value, and that all other laborers should be left to secure to themselves such compensation for their work as the conditions of supply and demand, competition, personal qualities, energy, skill, and experience, may enable them to do.

After the most careful and thorough examination of all the questions of law presented by the demurrer in this case, we are satisfied that the ruling of the lower court was not erroneous, and its judgment is therefore affirmed.

Jordan and Gillett, JJ., upon the facts, concur in the result.