# The Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Schuler.

[No. 22,351.    Filed June 12, 1914.]

1. Railroads.—*Regulation.*—*Statutes.*—*Class Legislation.*—While railroads may be placed in a class to themselves for some legislative purposes, such classification, to be valid, must be for purposes that have to do with duties peculiar to them as carriers, or with dangers peculiar to their operation. p. 58.

2. Railroads.—*Payment of Employes.*—*Statutes.*—*Validity.*—Sections 2683c, 2683d Burns 1914, Acts 1911 p. 446, requiring railroad companies to pay any employe in full within seventy-two hours after he has been discharged or has voluntarily quit the service, and providing certain penalties, are unjustly discriminatory and violate §23, Art. 1, of the State Constitution, since the classification made is arbitrary and without any valid reason for its basis. (*Seelyville Coal, etc., Co.* v. *McGlosson* [1906], 166 Ind. 561, distinguished.)    p. 58.

From Superior Court of Madison County; *H. Clarence Austill*, Judge.

Action by George E. Schuler against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company  From a judgment for plaintiff, the defendant appeals.    *Reversed.*

*John W. Lovett* and *Burke G. Slaymaker*, for appellant.
*Henry C. Ryan* and *Marc Ryan*, for appellee.

Spencer, J.—Appellee instituted this action to recover for services rendered to appellant by appellee and to recover the amount of a penalty alleged to be due under the provisions of §2683c Burns 1914, Acts 1911 p. 446, which reads as follows: "Any railroad company employing men shall within seventy-two hours after any employe voluntarily quits such service or is discharged, pay to such employe in full the wages due to the time of quitting of such service: *Provided,* Demand is made therefor and upon failure so to do, such railroad company shall be liable to such employe for each day until such payment is made in a sum equal to the daily wage of the employe."    Section 2683d Burns 1914,

Acts 1911 p. 446, provides a criminal penalty for the violation of the above statute. In this appeal from a judgment rendered in favor of appellee, appellant takes the position that said statutes constitute class legislation and are therefore unconstitutional and void, because in violation of §23, Art. 1, of the Constitution of Indiana.

It is true, as appellant concedes, that railroads may be placed in a class by themselves for some legislative purposes, but only for such purposes as have to do with duties

1. peculiar to them as carriers or with the dangers peculiar to their operation. The rule is thus stated in *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674, 14 L. R. A. (N. S.) 418: "The legislature may make a classification for legislative purposes, but it must have some reasonable basis upon which to stand. It is evident that differences which would serve for a classification for some purposes would furnish no reason for a classification for legislative purposes. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial. Not only must the classification treat all brought under its influence alike, under the same conditions, but it must embrace all within the class to which it is naturally related. Neither mere isolation nor arbitrary selection is a proper classification."

There is nothing in the act under consideration which suggests a valid basis for the classification which it makes. It is not designed to regulate the business of common

2. carriers nor has it any reference to the hazards peculiar to the operation of railroads. In brief, no good reason appears for requiring railroads to pay, in accordance with the provisions of this act, those who leave their service, while manufacturing corporations and other employers of labor are excepted from its operation. In the

case of *Gulf, etc., R. Co.* v. *Ellis* (1897), 165 U. S. 150, 17
Sup. Ct. 255, 41 L. Ed. 666, the Supreme Court of the
United States had under consideration an act passed by the
legislature of the state of Texas which provided that if rail-
road companies, under certain conditions, failed to pay valid
claims "for personal services rendered or labor done", etc.,
within thirty days after such claims were duly presented,
the claimant, in recovering a judgment thereon, should re-
cover also certain attorney's fees. In holding the act un-
constitutional the court, speaking by Mr. Justice Brewer,
used the following language which we deem applicable here:
"It is simply a statute imposing a penalty upon railroad
corporations for a failure to pay certain debts. No individ-
uals are thus punished, and no other corporations. The
act singles out a certain class of debtors and punishes them
when for like delinquencies it punishes no others. They
are not treated as other debtors, or equally with other
debtors. * * * If it be said that this penalty is cast
only upon corporations, that to them special privileges are
granted, and therefore upon them special burdens may be
imposed, it is a sufficient answer to say that the penalty is
not imposed upon all corporations. The burden does not
go with the privilege. Only railroads of all corporations
are selected to bear this penalty. * * * That such
corporations may be classified for some purposes is unques-
tioned. The business in which they are engaged is of a pe-
culiarly dangerous nature, and the legislature, in the exer-
cise of its police powers, may justly require many things to
be done by them to secure life and property. * * * But
a mere statute to compel the payment of indebtedness does
not come within the scope of police regulations. The haz-
ardous business of railroading carries with it no special
necessity for the prompt payment of debts. That is a duty
resting upon all debtors, and while in certain cases there
may be a peculiar obligation which may be enforced by
penalties, yet nothing of that kind springs from the mere

work of railroad transportation.'' See, also, *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193, 203; *Seaboard Air Line Railway* v. *Simon* (1908), 56 Fla. 545, 47 South. 1001, 20 L. R. A. (N. S.) 126, 16 Ann. Cas. 1234; *Missouri, etc., R. Co.* v. *Braddy* (1911), 135 S. W. (Tex. Civ. App.) 1059.

Our attention is called to the case of *Seelyville Coal, etc., Co.* v. *McGlosson* (1906), 166 Ind. 561, 117 Am. St. 396, 9 Ann. Cas. 234, as decisive of the question presented by this appeal, but the act there under consideration differs materially from the one which is now challenged. To quote from the opinion in that case, at page 566, ''It will be noted that the provisions of section one of the statute include or apply to all persons, natural or artificial, engaged 'in mining coal, ore or other minerals, or in quarrying stone, or engaged in manufacturing iron, steel, lumber, staves, heading barrels, brick, tile machinery, agricultural or mechanical implements, or any article of merchandise.' This classification certainly can not be said to be narrow, unreasonable or arbitrary.'' That statute operates equally on all persons engaged in any one of the great group of manufacturing and mining industries, but the present act is applicable only to one particular type of common carriers,—the railroads, and grants to the employes of railroads, privileges which are not given to any other class of laboring men. It will be noted that the act applies to any employe who voluntarily quits the service of a railroad, as well as to one who is discharged. It must therefore apply as well to one who voluntarily quits the service without just cause of complaint as to one who is discharged by the corporation without any reason therefor. If the act applied only to discharged employes a different question would be presented. When the act was passed there was no statute relating to the time of payment of wages of railroad employes, but in 1913 (Acts 1913 p. 47, §7989a Burns 1914) a statute was passed requiring *all* employers of labor to pay their employes semi-

monthly.  If the act in controversy can be held valid, we would have a present situation where the faithful employe who is working regularly can only demand payment of his wages semimonthly, while one who voluntarily quits the service of a railroad company without cause must be paid in seventy-two hours.  There is no just reason for such discrimination.  The classification made in the act before us is arbitrary and without any valid reason for its basis. For the reasons above stated we hold that §§2683c, 2683d Burns 1914, *supra,* are unconstitutional and invalid.

Judgment reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 105 N. E. 567.  As to the validity of statutes regulating the time of payment of wages, see 9 Ann. Cas. 238; 13 Ann. Cas. 482.  As to laws regulating wages as class legislation, see 122 Am. St. 903.  See, also, under (1, 2) 8 Cyc. 1058.