Eugene COLLINS, Appellant
(Plaintiff Below),

v.

Glen DAY, Appellee (Defendant Below).

No. 93S02–9411–EX–1120.

Supreme Court of Indiana.

Nov. 28, 1994.

J. Alexander Tanford, Indiana University School of Law, Bloomington, Richard A. Wa-

ples, Indiana Civil Liberties Union, Indianapolis, for appellant.

Pamela K. Thompson, Sandra L. Heeke, Smith Bartlett, Heeke & Carpenter, Jeffersonville, for appellee.

Nancy E. Hale, Indianapolis, for amicus curiae Legal Services Organization of Indiana, Inc.

ON PETITION TO TRANSFER

DICKSON, Justice.

This case presents a state constitutional challenge to the exclusion of agricultural workers from the coverage of the Indiana Worker's Compensation Statute. The foundational question is whether the requirements of the Privileges and Immunities Clause, Article 1, § 23, of the Constitution of Indiana, are independent of and distinguishable from those imposed by the Fourteenth Amendment to the Constitution of the United States. To address this and related questions, we grant transfer.

The parties have stipulated to the facts. On February 11, 1989, plaintiff-appellant Eugene Collins sustained a broken right leg in an accident in the course of his employment as an agricultural employee of defendant-appellee Glen Day. The defendant denies that any compensable accident occurred under the provisions of the Act and has not paid the plaintiff any worker's compensation benefits. The defendant had not exercised the statutory election to waive the agricultural exemption and thus had not agreed to provide worker's compensation coverage. In the plaintiff's application for such benefits, he claims medical expenses of $12,000.00 and average weekly earnings at the time of the accident of $140.00 per week, in addition to the value of the use of a residence.

The full Worker's Compensation Board affirmed the single Hearing Judge's order granting the defendant's Motion to Dismiss, which generally raised the statutory agricultural exemption to the Indiana Worker's Compensation Act, which provides in part that the Act "shall not apply to casual labor ... nor to farm or to agricultural employees, nor to domestic servants, nor to the employ-

ers of such persons." Ind.Code § 22–3–2–9(a). The plaintiff appealed, contending that the agricultural exemption violated Article I, Section 23 of the Indiana Constitution (hereafter "Section 23"), which provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

The Court of Appeals concluded that questions under Indiana's Privileges and Immunities Clause should be treated the same as claims under the federal Fourteenth Amendment's Equal Protection Clause,[1] applied the federal "rational basis" test to find that the agricultural exemption was rationally related to legitimate state interests, and affirmed the Worker's Compensation Board. *Collins v. Day* (1992), Ind.App., 604 N.E.2d 647.

In this appeal, the plaintiff argues that the worker's compensation agricultural exemption violates Section 23 because it extends to a special class of employers an immunity denied to the general class of employers. He further contends that the statutory grant to agricultural employers of the option to elect either to be covered by or to be exempt from the Indiana Worker's Compensation Act is a privilege both denied to a comparable class of agricultural employees and denied to the general class of Indiana employers. Noting varying approaches taken in prior cases as to the relationship between Indiana's Section 23 and the federal Fourteenth Amendment, the plaintiff urges that Section 23 may be applicable separately from and in addition to the federal equal protection guarantee. He asserts that, although Fourteenth Amendment principles may be equally appropriate to equal protection issues under Section 23, a different analysis should be applied to address a grant of special privileges or immunities to a favored class. The plaintiff proposes that such analysis requires that any discriminatory grant of special privilege or immunity between similarly situated people: (1) rest upon some rational and substantial basis, (2) further a legitimate state interest, (3)

be justified by facts appearing in the record or judicially noticed, and (4) be reasonably narrowly tailored to its purpose. Applying his proposed analysis, the plaintiff concludes that the Indiana worker's compensation agricultural exclusion violates Section 23.

In response, the defendant contends that the Equal Protection Clause of the United States Constitution and the Privileges and Immunities Clause of the Indiana Constitution are identical and call for application of the "rational basis" standard unless fundamental rights or suspect classifications are involved. The defendant asserts that the agricultural exemption classification and its underlying reasons are rationally related to furthering legitimate state interests.

### 1. Applicability of the Federal Standard to Section 23

■ Initially, we must determine whether settled Indiana law forecloses consideration of plaintiff's contention that federal Fourteenth Amendment jurisprudence does not necessarily apply to a claim brought under Section 23 of the Indiana Constitution.

During the 143 years since the ratification of Section 23, this Court has assumed various postures with respect to the applicability of federal Fourteenth Amendment standards to Section 23 questions. One such approach suggests that a distinction ought to be drawn between Section 23 and the Fourteenth Amendment. There are striking textual differences between the two provisions. The Fourteenth Amendment prohibits laws which "abridge" privileges or immunities, whereas Section 23 prohibits laws which "grant" unequal privileges or immunities. Many Indiana cases have considered and applied Section 23 separately from the Fourteenth Amendment. For example, in *Graffty v. City of Rushville*, we noted that Section 23 considerations were to be analyzed independently from the "provisions of the National Constitution." *Graffty v. City of Rushville* (1886),

---

1. The Fourteenth Amendment to the Constitution of the United States provides in relevant part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

107 Ind. 502, 509, 8 N.E. 609, 612. In at least one case, a statute was found to comply with the federal Privileges and Immunities Clause but nevertheless to violate the parallel provision in Indiana's Section 23. *Sperry & Hutchinson Co. v. State* (1919), 188 Ind. 173, 122 N.E. 584. Several decisions of this Court have expressly acknowledged that Section 23 "is the antithesis of the 14th amendment to the federal Constitution." *Hammer v. State* (1909), 173 Ind. 199, 206, 89 N.E. 850, 852. *See also Midwestern Petroleum Corp. v. State Bd. of Tax Comm'rs* (1933), 206 Ind. 688, 187 N.E. 882, *reh'g denied; Fountain Park Co. v. Hensler* (1927), 199 Ind. 95, 155 N.E. 465; *Cincinnati, H. & D. Ry. Co. v. McCullom* (1915), 183 Ind. 556, 109 N.E. 206, *aff'd* (1917), 245 U.S. 632, 38 S.Ct. 64, 62 L.Ed. 521. Similarly suggesting the distinction between Section 23 and the Fourteenth Amendment, numerous other cases have undertaken the analysis of constitutional claims under first one of the provisions and then the other. *Reilly v. Robertson* (1977), 266 Ind. 29, 360 N.E.2d 171, *cert. denied,* (1977), 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83; *Phillips v. Officials of Valparaiso* (1954), 233 Ind. 414, 120 N.E.2d 398; *Shedd v. Automobile Ins. Co.* (1935), 208 Ind. 621, 196 N.E. 227; *Davis Constr. Co. v. Board of Comm'rs* (1921), 192 Ind. 144, 132 N.E. 629; *Inland Steel Co. v. Yedinak* (1909), 172 Ind. 423, 87 N.E. 229; *Levy v. State* (1903), 161 Ind. 251, 68 N.E. 172; *Street v. Varney Elec. Supply Co.* (1903), 160 Ind. 338, 66 N.E. 895; *Pennsylvania Co. v. State* (1895), 142 Ind. 428, 41 N.E. 937; *Warren v. Sohn* (1887), 112 Ind. 213, 13 N.E. 863; *Cory v. Carter* (1874), 48 Ind. 327.

A contrasting line of cases has maintained that Section 23 and the Fourteenth Amendment share substantially the same considerations. In *Dortch v. Lugar* (1971), 255 Ind. 545, 567, 266 N.E.2d 25, 39, our opinion noted that Section 23 and the Fourteenth Amendment "concerning the abridging of privileges and immunities of citizens protect substantially identical rights." *Id.* Other cases have considered the two provisions essentially synonymous. *See, e.g., Johnson v. St. Vincent Hosp.* (1980), 273 Ind. 374, 397, 404 N.E.2d 585, 600; *Sidle v. Majors* (1976), 264 Ind. 206, 210, 341 N.E.2d 763, 767; *State ex rel. Miller v. McDonald* (1973), 260 Ind. 565, 569, 297 N.E.2d 826, 829, *cert. denied,* (1974), 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 111; *Haas v. South Bend Community Sch. Corp.* (1972), 259 Ind. 515, 526, 289 N.E.2d 495, 501. Numerous cases have treated the two provisions simultaneously, without any explicit statement as to equivalence or separateness. *See, eg., Murphy v. Schilling* (1979), 271 Ind. 44, 389 N.E.2d 314; *State v. Hi–Jinks, Inc.* (1962), 242 Ind. 621, 181 N.E.2d 526; *W.A. Barber Grocery Co. v. Fleming* (1951), 229 Ind. 140, 96 N.E.2d 108; *Vandalia R.R. v. Stillwell* (1914), 181 Ind. 267, 104 N.E. 289, *aff'd* (1916), 239 U.S. 637, 36 S.Ct. 445, 60 L.Ed. 480; *Indianapolis Union Ry. Co. v. Houlihan* (1901), 157 Ind. 494, 60 N.E. 943; *State v. Hogreiver* (1899), 152 Ind. 652, 53 N.E. 921.

Notwithstanding that the privileges and immunities cases brought under Section 23 have often assimilated federal equal protection analysis, we are under no obligation to follow Fourteenth Amendment jurisprudence in resolving a Section 23 issue. An analogous issue was encountered in *Miller v. State* (1987), Ind., 517 N.E.2d 64, where we observed that Indiana courts had often relied upon federal case law addressing the Sixth Amendment to the United States Constitution in reviewing claims invoking the right of confrontation arising from Article 1, Section 13, of the Indiana Constitution. *Id.* at 68. Nevertheless, we there declared that such precedents do not preclude us from forming an independent standard for analyzing state constitutional claims. *Id.* at 69.

We conclude that there is no settled body of Indiana law that compels application of a federal equal protection analytical methodology to claims alleging special privileges or immunities under Indiana Section 23 and that Section 23 should be given independent interpretation and application. The formulation of a separate Section 23 standard requires consideration of the circumstances of its adoption and its application in subsequent Indiana cases, and we now undertake this task.

## 2. The Section 23 Standard

■ Properly interpreting a particular provision of the Indiana Constitution involves

a search for the common understanding of both those who framed it and those who ratified it. *Bayh v. Sonnenburg* (1991), Ind., 573 N.E.2d 398, 412, *reh'g denied, cert. denied* (1992), 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415. The constitutional convention met in late 1850 and early 1851 against a backdrop of problems associated with states' efforts to develop their infrastructures and stimulate economic progress. Beginning in 1836, the State of Indiana had engaged in a general system of internal improvements, issuing bonds which were then sold in the market at a heavy discount, with the resulting money "squandered on various railroads and canals," none of which were completed. *Lafayette, M. & B.R.R. v. Geiger* (1870), 34 Ind. 185, 205. The bonds greatly depreciated in value, the state's credit "was utterly ruined in the money market," and the state abandoned the completion of the improvement projects in 1842. *Id.* Our legislature then authorized the continuance of these public works by private companies and empowered counties to purchase stock therein, financed by issuing bonds or levying taxes. *Id.* at 205–06. By 1850, the state "had become bankrupt" and "many of the counties had created heavy and onerous debts." *Id.* at 206.

■ The substance of Section 23 was first proposed on December 31, 1850, by Monroe County delegate Daniel Read. Mr. Read's remarks to delegates before and during the convention reveal his intent on this issue. Subsequent writers have noted that his convention speeches were "in stout opposition to all laws providing for state construction of internal improvements, against laws involving the funds of the state in banking, and against laws lending the credit or trust funds of the state to corporations." 1 James Albert Woodburn, *History of Indiana University, 1820–1902* 191 (1940). Mr. Read asserted that the state "ought not in any way to become the partner of the merchant, the manufacturer, or the banker." 1 *id.* at 192. Two months prior to his introduction of Section 23, he quoted to the convention sections of Andrew Jackson's farewell address, urging that:

unless you become more watchful in your States, and check this spirit of monopoly and thirst for exclusive privileges, you will, in the end, find that the most important powers of government have been given or bartered away, and the control over your dearest interests has passed into the hands of these corporations.

1 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1850* 221–22 (1850). One month before introducing Section 23, Read advised:

Money making is not the business of the State. . . . If she sells out a monopoly for a *bonus*, the robbery upon the citizens is ordinarily still worse, as being paid for and sanctified by a right purchased from government. If the State becomes a partner with a few of her citizens, to the exclusion of others, offering the same terms, it is still a most odious and anti-republican principle, and more worthy of the days of monopoly. . . .

1 *id.* at 646.

Several weeks before introducing Section 23, Read, speaking against perpetuities and monopolies, declared, "I think both are contrary to the spirit of a free State, and that we ought to make a declaration of that kind in our Bill of Rights." 1 *id.* at 975.

The comments of others during the convention reveal that the purpose of Section 23 was to prohibit state entanglement in private profit-seeking ventures and to avoid the creation of monopolies. Mr. Biddle of Cass County stated:

[T]he proposition is a plain one, that there shall be no exclusive monopolies—no privilege granted to one man which shall not, *under the same circumstances*, belong to all men. . . . This principle leaves men of capital precisely where it leaves men in their natural condition—equal. If the majority of this Convention will not grant to all men equal rights, let them vote against the proposition. If they do not desire to leave the road of capital, of skill, of enterprise, of talent, of industry, of worth, open alike to every citizen of Indiana, let them vote against it.

2 *id.* at 1394. Mr. Pepper of Ohio County declared, "The section proposed by the gentleman from Monroe, is intended to prohibit the Legislature from establishing monopolies, or granting special privileges." 2 *id.* at 1395. Similarly, Mr. Clark of Tippecanoe, though expressing concern about the precise effects of the section, generally noted that the proposal "provides that if the Legislature grant to one set of persons a privilege, it shall grant the same privilege to all other persons. If they grant a privilege to a corporation, they shall grant the same privilege to all other persons who ask for the privilege." 2 *id.* at 1397. Responding to a concern that the section would improperly extinguish the possibility of a state bank, Mr. Read declared that, should a state bank be authorized

> upon the principle of the proposed section [23] . . . every branch would have to come in on the same terms. . . . This [Section 23] destroys the monopoly principle, and I think that there are not twenty gentlemen even among those who are in favor of the State Bank, who would be in favor of this principle of monopoly. The doctrine of the section carried out in the laws and the Constitution would destroy monopoly State banking, but not prevent every system of State banking which might be devised.

2 *id.* at 1393.

Newspaper coverage of the convention debates, although not widespread or detailed with respect to Section 23, illustrates the public perception as to the purpose and intent of the section. For example, *The New Albany Daily Ledger* reported that "Mr. Read of Monroe read a speech of much force and power as well as logical argument. He is extremely hostile to exclusive privileges, as the section [23] he introduced against class legislation will show." *Constitutional Convention,* New Albany Daily Ledger, Jan. 13, 1851, at 2.

From all available indications, we conclude that at the time of the adoption of Section 23 and its ratification as part of the 1851 Indiana Constitution, the principal purpose was to prohibit the state legislature from affirmatively granting any exclusive privilege or immunity involving the state's participation in commercial enterprise. Section 23 does not appear to have been enacted to prevent abridgement of any existing privileges or immunities, nor to assure citizens the equal protection of the laws.

However, in reviewing historical underpinnings to reinterpret Section 23 and reformulate a standard for its practical application, our inquiry does not necessarily end with a literal reading of the provision and of the expressed purposes and intent of its framers and ratifiers. Early decisions of this Court interpreting our Constitution, particularly those contemporaneous with its adoption and "practiced and acquiesced in for a period of years," have been accorded strong and superseding precedential value. *Lafayette, M. & B.R.R. v. Geiger,* 34 Ind. 185, 213. *See also Board of Comm'rs v. Gwin* (1894), 136 Ind. 562, 590, 36 N.E. 237, 246. Prior cases construing and applying Section 23 independently from federal equal protection analyses are important sources for our consideration.

During the years following the adoption of the 1851 Constitution, Section 23 was often applied to invalidate enactments which, rather than granting special privileges, imposed special burdens. In *Graffty v. City of Rushville,* Section 23 was used to invalidate a Rushville municipal ordinance which imposed a vendor's fee for sales by all but Rushville citizens (and specified others) of goods not grown or manufactured in Rush County. *Graffty,* 107 Ind. 502, 8 N.E. 609. The statute was viewed as an attempt to "grant privileges to the citizens of Rushville, which are not equally and upon the same terms open to all citizens." *Id.* at 508–09, 8 N.E. at 612. Similarly, a statute prohibiting merchants, but not others, from issuing tokens in exchange for wage assignments from coal mine employees was found to violate Section 23 in *Dixon v. Poe* (1902), 159 Ind. 492, 65 N.E. 518. We are unaware of any cases in which this Court has expressly declined to apply Section 23 protection simply because an enactment created a special burden rather than a special privilege. However, this is not surprising, because implicit in an enactment that imposes an unequal burden is the grant of a special privilege or immunity to persons or classes exempted from the new burden.

Longstanding decisions of this Court have expanded the function of Section 23 not only by failing to restrict its application to legislation granting, rather than abridging, privileges or immunities, but also by repeatedly applying Section 23 to matters unconnected with the state's involvement in commercial enterprise, thereby giving preference to the literal language of Section 23 rather than to the intent of its framers. *See, e.g., Needham v. Proffitt* (1942), 220 Ind. 265, 41 N.E.2d 606 (invalidating prohibition of newspaper advertisement of funeral prices); *State Bd. of Barber Examiners v. Cloud* (1942), 220 Ind. 552, 44 N.E.2d 972, *reh'g denied* (finding a regulation of barbershop hours to be violation); *Martin v. Loula* (1935), 208 Ind. 346, 194 N.E. 178, *reh'g denied,* (finding in violation a law permitting wage garnishment notwithstanding statutory exemptions); *Sperry & Hutchinson Co.,* 188 Ind. 173, 122 N.E. 584 (invalidating prohibitory license fee for distribution and redemption of trading stamps); *Cleveland, C., C. & St. L. Ry. v. Schuler* (1914), 182 Ind. 57, 105 N.E. 567 (striking down employee termination pay requirement imposed exclusively on railroads); *Dixon,* 159 Ind. 492, 65 N.E. 518 (invalidating prohibition on issuing merchandise tokens in exchange for coal miners' wage assignments); *In re Leach* (1893), 134 Ind. 665, 34 N.E. 641 (preventing the exclusion of women from admission to law practice); *City of Evansville v. State* (1888), 118 Ind. 426, 21 N.E. 267 (overturning political and local residency requirements for certain city employees); *State ex rel. Holt v. Denny* (1888), 118 Ind. 449, 21 N.E. 274 (precluding residency and political limitations for fire and police commissioners); *Graffty,* 107 Ind. 502, 8 N.E. 609 (invalidating fee for sale of goods not manufactured or grown in local county).

■ Excluding the line of cases which have applied federal equal protection methodology to state Section 23 issues, there exists a considerable body of case law reviewing the state constitutional question, from which a substantially uniform, though still evolving, analytical standard has emerged. Our review discloses several recurrent themes which we now distill into two general factors.

The considerations embodied in the first of the two factors focus upon the nature of the classifications of citizens upon which the legislature is basing its disparate treatment. Numerous cases have stated that the basis of such classification must "inhere in the subject matter." *See, e.g. Railroad Comm'n v. Grand Trunk W.R.R.* (1913), 179 Ind. 255, 262, 100 N.E. 852, 854; *Hirth–Krause Co. v. Cohen* (1912), 177 Ind. 1, 10, 97 N.E. 1, 5; *Bank of Commerce v. Wiltsie* (1899), 153 Ind. 460, 474, 53 N.E. 950, 955, *reh'g denied.* In *Heckler v. Conter* (1933), 206 Ind. 376, 381, 187 N.E. 878, 879, we stated that legislative classification must be:

> based upon substantial distinctions germane to the subject matter and the object to be attained.

> The distinctions must involve something more than mere characteristics which will serve to divide or identify the class. There must be inherent differences in situation related to the subject-matter of the legislation which require, necessitate, or make expedient different or exclusive legislation with respect to the members of the class.

*Id.* Similar language has been used in other cases. *See School City of Elwood v. State* (1932), 203 Ind. 626, 635–36, 180 N.E. 471, 474 ("There must be some inherent and substantial difference germane to the subject and purpose of the legislation between those included within the class and those excluded"); *Dowd v. Stuckey* (1943), 222 Ind. 100, 104, 51 N.E.2d 947, 948 (classification "must rest upon some rational and substantial basis inherent in the subject-matter, some difference in situation which distinguishes those within the class from those without, and which rationally justifies different or unequal treatment"). More recently, our decisions have summarily stated that legislative classifications must be "based on substantial distinctions with reference to the subject matter." *Chaffin v. Nicosia* (1974), 261 Ind. 698, 701, 310 N.E.2d 867, 869; *Phillips,* 233 Ind. at 421, 120 N.E.2d at 401.

The significant common theme shared by such formulations is the requirement that, where the legislature singles out one person or class of persons to receive a privilege or immunity not equally provided to others,

such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics. We believe that this requirement incorporates and satisfies the often expressed concerns that such legislative classifications be "just," "natural," "reasonable," "substantial," "not artificial," "not capricious," and "not arbitrary." *See Barrett v. Millikan* (1901), 156 Ind. 510, 516, 60 N.E. 310, 312 ("just, natural, and reasonable"); *Hirth–Krause,* 177 Ind. at 10, 97 N.E. at 5 ("natural and substantial"); *Sperry & Hutchinson Co.,* 188 Ind. at 183, 122 N.E. at 587–88 ("just and reasonable," not "manifestly and unmistakably arbitrary," resting on some "substantial and not merely artificial reason"); *School City of Elwood,* 203 Ind. at 635, 180 N.E. at 474 ("reasonable and natural, not capricious and arbitrary"); *Dowd,* 222 Ind. at 104, 51 N.E.2d at 948 ("rational and substantial"). This requirement, then, comprises the first prong of the two-part Section 23 standard we articulate today.

The second of the two factors embraces concerns, frequently expressed in Section 23 cases, regarding the need for uniformity and equal availability of the preferential treatment for all persons similarly situated. In *Dixon,* 159 Ind. 492, 65 N.E. 518, an enactment was invalidated because it failed to "embrace all of the class to which it is naturally related." *Id.* at 496, 65 N.E. at 519. Section 23 was found to be violated when a law "creates a preference, and establishes an inequality among a class of citizens all of whom are equally meritorious" or which "applies to persons in certain situations, and excludes from effect other persons who are not dissimilar in these respects." *Id.* at 497, 65 N.E. 518. Similar considerations are emphasized in numerous cases reviewing Section 23 issues. For example, in *McErlain v. Taylor* (1934), 207 Ind. 240, 192 N.E. 260, this Court stated:

> But, if there are other general classes situate[d] in all respects like the class benefitted by the statute, with the same inherent needs and qualities which indicate the necessity or expediency of protection for the favored class, and legislation.... withholds the same protection from, the other class or classes in like situation, it cannot stand.

*Id.* at 243–44, 192 N.E. at 262, *quoted with approval in Hicks v. State* (1967), 249 Ind. 24, 30, 230 N.E.2d 757, 760. *See also Heckler,* 206 Ind. at 381, 187 N.E. at 879–80 (the classification "must embrace all who possess the attributes or characteristics which are the basis of classification, and their difference from those excluded must be substantial and related to the purpose of the legislation"); *School City of Elwood,* 203 Ind. at 635, 180 N.E. at 474 (classification "must embrace all who naturally belong to the class"); *Grand Trunk W.R.R.,* 179 Ind. at 262, 100 N.E. at 854 (classification "must operate equally upon all within the class" and "must also embrace all within the class to which it naturally belongs"); *State v. Richcreek* (1906), 167 Ind. 217, 224, 77 N.E. 1085, 1087 ("the provisions of the restrictive act be in fact open alike to all citizens who may bring themselves within its terms"); *Seelyville Coal & Mining Co. v. McGlosson* (1906), 166 Ind. 561, 566, 77 N.E. 1044, 1046 (upholding statute, finding that it "operates upon all persons who come within the class to which it applies"); *Barrett,* 156 Ind. at 516, 60 N.E. at 312 ("applies equally to all the citizens of the state who bring themselves within the remedial scope of this act"); *Hancock v. Yaden* (1890), 121 Ind. 366, 374, 23 N.E. 253, 255 ("All who are members of the classes named are entitled to its benefits or subjected to its burdens. It is open to every citizen to become a member of any of the classes designated, and the privileges conferred belong on equal terms to all").

We conclude that, as the second general requirement of Section 23 compliance, any privileged classification must be open to any and all persons who share the inherent characteristics which distinguish and justify the classification, with the special treatment accorded to any particular classification extended equally to all such persons.

It is important to note that, in applying the two-part standard we articulate today to claims asserted under Section 23, the courts

must accord considerable deference to the manner in which the legislature has balanced the competing interests involved. *Johnson,* 273 Ind. at 404–05, 404 N.E.2d at 604. Presuming the statute to be constitutional, courts place the burden upon the challenger "to negative every conceivable basis which might have supported the classification." *Id.* at 392, 404 N.E.2d at 597. The question of classification under Section 23 is primarily a legislative question. *Chaffin* (1974), 261 Ind. at 701, 310 N.E.2d at 869. As this Court has stated:

> Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable. So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification.

*Id.* In *Sperry & Hutchinson Co.*, 188 Ind. at 183, 122 N.E. at 587, we said that "[i]f any state of facts within the fair range of probability can be reasonably supposed, which would supply an adequate reason on which to base the classification made, such state of facts will be assumed to have existed when the law was enacted." *Id.* Similarly, we have described the proper judicial role as follows:

> The power of the legislature is not without limitations but, necessarily, this power must have a wide range of discretion. There is no precise rule of reasonableness of classification, and the rule of equality permits many practical inequalities. A classification having some reasonable basis is not to be condemned merely because it is not framed with such mathematical nicety as to include all within the reason of the classification and to exclude all others. Exact exclusion and inclusion is impractical in legislation. It is almost impossible to

provide for every exceptional and imaginary case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, even though appropriate and proper as applied to the general subject upon which the law intended to operate.

*Cincinnati, H. & D. Ry.*, 183 Ind. at 561, 109 N.E. at 208 (citations omitted).

To summarize, we hold that Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

█ The resolution of Section 23 claims does not require an analytical framework applying varying degrees of scrutiny for different protected interests.[2] The protections assured by Section 23 apply fully, equally, and without diminution to prohibit any and all improper grants of unequal privileges or immunities, including not only those grants involving suspect classes or impinging upon fundamental rights but other such grants as well. For example, this Court has applied Section 23 to invalidate grants of privilege which were improperly gender-based without using a heightened level of scrutiny. *See Reilly*, 266 Ind. 29, 360 N.E.2d 171 (invalidating under an independent Section 23 standard a state pension scheme which discriminated on the basis of gender); *In re Leach* (1893), 134 Ind. 665, 34 N.E. 641 (applying

---

2. We note that of the thirty-three states which have constitutional provisions which limit or forbid legislation granting special privileges or immunities, eight state constitutions contain a Privileges and Immunities Clause strikingly similar or identical to Indiana's Section 23. Ariz. Const. art. II, § 13; Ark. Const. art. II, § 18; Cal. Const. art. I, § 7; Iowa Const. art. I, § 6; N.M. Const. art. IV, § 26; N.D. Const. art I, § 21.

Okla. Const. art. 5, § 51; Or. Const. art. I, § 20; Wash. Const. art. I, § 12. Of these, only Oregon purports to utilize a single standard rather than to employ a system of varying degrees of scrutiny. *Hale v. Port of Portland* (1989), 308 Or. 508, 783 P.2d 506. *State v. Clark* (1981), 291 Or. 231, 630 P.2d 810, *cert. denied* (1981) 454 U.S. 1084, 102 S.Ct. 640, 70 L.Ed.2d 619.

independent Section 23 analysis to reverse lower court's interpretation of statute as prohibiting the practice of law by women, without mention of the Fourteenth Amendment's Equal Protection Clause). The multiple-level system remains, of course, an integral aspect of the test of a statute's constitutionality under federal Fourteenth Amendment jurisprudence. This Court anticipates that our independent state privileges and immunities jurisprudence will evolve in future cases facing Indiana courts to assure and extend protection to all Indiana citizens in addition to that provided by the federal Fourteenth Amendment.

*3. Application of the Standard*

The plaintiff contends that the exclusion of agricultural employers from the compulsory scope of coverage and the creation of an exclusive privilege for such employers to waive this exclusion [3] each violates Section 23. He contends that the exemption of employers is an immunity extended one class of employers which is denied to the general class of employers and that the right to elect coverage is a privilege denied to both agricultural employees and the general class of employers.

■ We first address whether the treatment of agricultural employers separately from agricultural employees and from the general class of employers is a classification based upon distinctive, inherent characteristics and, if so, whether the unequal treatment is reasonably related to such distinguishing characteristics.

Applying the required deferential standard of review, we find that there are inherent distinctions between these classifications that are reasonably related to the exemption. The legislative classification may have been based upon various features reasonably distinguishing Indiana agricultural employers from other employers, among which are: the prevalence of sole proprietorships and small employment units, including numerous family operations; the distinctive nature of farm work, its attendant risks, and the typical level of worker training and experience; the traditional informality of the agricultural employment relationship and the frequent absence of formal ancillary employee benefit programs; and the peculiar difficulties agricultural employers experience in passing along the additional cost of worker's compensation insurance coverage to the ultimate consumer. *See Collins,* 604 N.E.2d at 651. Furthermore, we find that within the classification of agricultural employers, the exemption from worker's compensation coverage for employees is uniformly applicable and equally available to all persons who are or may become agricultural employers.

The amicus curiae, Legal Services Organization of Indiana, Inc., through its Migrant Farmworker Project, has submitted a forceful, thorough, and well-documented brief to support its contention that "the nature of agricultural work and the structure of agriculture in 1974 and today is so radically different than in 1915, that the continued exclusion of farmworkers from worker's compensation coverage does not comply with legislat[ive] intent." Brief of Amicus Curiae at 3A. We do not deny that preferential legislative treatment for a classification which was proper when enacted may later cease to satisfy the requirements of Section 23 because of intervening changes in social or economic conditions. In the present case, however, because we find the plaintiff has failed to carry the burden placed upon the challenger to negative every reasonable basis for the classification, we are not persuaded that the

---

**3.** Ind.Code § 22–3–2–9 provides in part:

(b) An employer who is exempt under this section from the operation of the compensation provisions of this chapter may at any time waive such exemption and thereby accept the provisions of this chapter by giving notice as provided in subsection (c).

(c) The notice of acceptance referred to in subsection (b) shall be given thirty (30) days prior to any accident resulting in injury or death, provided that if any such injury occurred less than thirty (30) days after the date of employment, notice of acceptance given at the time of employment shall be sufficient notice thereof. The notice shall be in writing or print in a substantial form prescribed by the worker's compensation board and shall be given by the employer by posting the same in a conspicuous place in the plant, shop, office, room, or place where the employee is employed, or by serving it personally upon him....

agricultural exemption has become inconsistent with the requirements of Section 23.

We therefore conclude that the statutory agricultural exemption to the Indiana Worker's Compensation Act, Ind.Code § 22–3–2–9(a), does not presently constitute a special immunity in violation of the Indiana Privileges and Immunities Clause, Article I, Section 23 of the Indiana Constitution.

■ We similarly find that Section 23 is not violated by the optional statutory election, Ind.Code § 22–3–2–9(b), to waive the exemption and to accept the application of the Indiana Worker's Compensation Act. This special privilege is reasonably related to the inherent distinctions between the class of employers and the class of employees. It is exclusively within the employer's province to make the general management decisions governing the operation of the agricultural enterprise. The option to elect worker's compensation coverage for all employees of the operation is rationally limited to the employer. Extending the election to individual employees would result in inconsistent application of the Worker's Compensation Act among various employees of the same operation; and high rates of employee turnover diminish the wisdom of permitting employees at any given time to make an election on behalf of all employees of the operation. These inherent distinctions are reasonably related to the exclusive right of agricultural employers to waive their exemption. Likewise, to the extent that the optional nature of the elective coverage distinguishes between agricultural employers and the general class of employers, the elements inherently distinguishing these classes support the differing treatment, which is equally applicable to all persons similarly situated.

Transfer is granted, and the decision of the full Worker's Compensation Board of Indiana is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

SULLIVAN, J., dissenting without opinion, would deny transfer because he believes the analysis of the Court of Appeals in this case was correct.