**BROCKMANN ENTERPRISES, LLC, Appellant–Plaintiff,**

v.

**CITY OF NEW HAVEN, Terry McDonald, Wayne Doenges, and Tim Doyle, as the Board of Directors of the City of New Haven Department of Storm Water Management, City of New Haven Department of Storm Water Management, and City of New Haven Storm Water Taxing District, Appellees–Defendants.**

No. 02A04–0605–CV–272.

Court of Appeals of Indiana.

June 22, 2007.

Cathleen M. Shrader, John M. Clifton, Jr., Barrett & McNagny LLP, Fort Wayne, IN, Attorneys for Appellant.

Ann M. Trzynka, David C. Van Gilder, Van Gilder & Trzynka, P.C., Fort Wayne, IN, Wayne C. Turner, Shannon D. Landreth, McTurnan & Turner, Indianapolis, IN, Attorneys for Appellees.

## OPINION ON REHEARING

BAILEY, Judge.

The City of New Haven ("City"), the City's Department of Storm Water Management ("Department"), the Department's Board of Directors ("Board"), and the City's Storm Water Taxing District (collectively "Defendants") filed a Petition for Rehearing of this Court's Opinion of February 21, 2007, invalidating certain provisions of City Ordinance G–04–02 ("Ordinance"). For the reasons described below, we grant the Petition for Rehear-

ing, vacate our Opinion of February 21, 2007, and affirm the trial court's order of April 26, 2006.

### Facts and Procedural History

During the 2003 legislative session, the General Assembly passed amendments to Indiana Code Chapter 8–1.5–5 (Department of Storm Water Management) regarding the process by which municipalities were authorized to adopt rates for managing storm water. HEA 1798 (2003). The Governor vetoed the bill. Upon the General Assembly's override of the veto in January, 2004, the bill became effective. P.L. 282–2003. The amendment allowed a board formed under Indiana Code Chapter 8–1.5–5 or Indiana Code Chapter 8–1.5–3 to assess and collect user fees, after holding a public hearing on the matter, considering certain facts and potential classifications, and obtaining the approval of the city council. Ind.Code § 8–1.5–5–7.

On April 13, 2004, the City's Common Council held a public hearing to consider the Ordinance. The City's consultant made a presentation and answered most of the questions from the public. The Mayor answered some of the questions. Several others attended the hearing, including Wayne Doenges and Tim Doyle, who commented little. Two weeks later, the Council adopted the Ordinance, establishing the Department, its Board, the City's Storm Water Taxing District, and setting the User Fee for the first year. Ultimately, the Board was comprised of the Mayor, Doenges, and Doyle. The members of the Council and the Board were mutually exclusive.

The User Fee was fixed at $5.35 per month for residences. For non-residences, the User Fee was calculated based upon the impervious area on a property, but could be no greater than $257.81 per month. "Impervious area" was defined as

> [a]reas that have been paved and/or covered with buildings and materials which include, but are not limited to, concrete, asphalt, rooftop and blacktop, such that the infiltration of water into the soil is prevented. Excluded from this definition are undisturbed land, lawns and fields.

App. at 87. "Infiltration" was defined as "a complex process of allowing runoff to penetrate the ground surface and flow through the upper soil surface." *Id.*

### Discussion and Decision

#### I. Waiver

■ ■ In their Petition for Rehearing, the Defendants argue that, to the degree the process of adopting the Ordinance varied from statute, it was de minimis. Generally, any question not argued on appeal cannot be raised for the first time in a petition for rehearing. *New York Life Ins. Co. v. Henriksen*, 421 N.E.2d 1117, 1118 (Ind.Ct.App.1981). "The purpose of our appellate rules, especially Indiana Appellate Rule 46, is to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case." *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind.Ct.App.2003).

The Defendants argued in their Appellees' Brief that the process for adopting the User Fee complied with the Home Rule Act, the chapter regulating municipally owned utilities,[1] and the chapter reg-

---

1. The Defendants argue that Ind.Code §§ 8–1.5–3–1 to –15 (Municipally Owned Utilities) authorize a municipality to set rates for purposes of storm water management. Deciding the matter on other grounds, we need not address this assertion. *See* Ind.Code §§ 8–1.5–5–1 to –32 (Department of Storm Water Management), Ind.Code §§ 36–9–1–8(8) and 36–9–23–1 to –36 (authorizing municipalities to operate sewage works, including storm

ulating departments of storm water management. In so arguing, the Defendants added in one sentence that "any departure from the ... statutory procedure is of insufficient magnitude to render the Ordinance invalid." Appellees' Br. at 9. For that proposition, the Defendants cited *Krimendahl v. Common Council of Noblesville*, 256 Ind. 191, 267 N.E.2d 547 (1971) (holding that filing error was of insufficient magnitude to invalidate re-zoning petition where petition was filed with plan commission rather than clerk of city council). The argument was not further developed. Nonetheless, we conclude that the argument was sufficiently presented to permit our consideration on rehearing.

### II. Variance in Procedure was De Minimis

■ Our Supreme Court recently addressed the de minimis doctrine.

At some point in the prehistory of the common law, courts formulated the eminently practical doctrine now sometimes colloquially referred to as "de minimis" but formally stated as "de minimis non curat lex." Freely translated from the Latin, it proclaims that the law does not redress trifles. In contemporary American vernacular, it is the courts' way of saying "So what?" If there is no "what," the courts do not provide relief to ordinary litigants and certainly do not interfere with the operations of the other branches of government.

*D & M Healthcare, Inc. v. Kernan*, 800 N.E.2d 898, 900 (Ind.2003); see also *Bachelder v. Harshbarger*, 105 Ind.App. 41, 10 N.E.2d 927, 929 (1937) (rejecting as de minimis a landowner's argument that road assessment of $393.12 was $1.20 too great); *but see Ind. Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*, 813 N.E.2d 330, 335 (Ind.Ct.App.2004) (rejecting school's argument that its omission of the administrative record in petition for judicial review was de minimis and accordingly concluding that court lacked subject matter jurisdiction). In *D & M Healthcare*, the Governor vetoed a bill and delivered it back to the legislature after its session had ended. The veto was challenged on the basis that the Governor had delivered the veto six months *earlier* than allowed by the precise terms of Article 5, Section 14(a)(2)(D) of the Indiana Constitution. Relying on the fact that the party challenging the veto could cite no practical consequences from the early delivery of a veto, the *D & M Healthcare* Court held that the procedural variance was de minimis and therefore upheld the Governor's veto. *D & M Healthcare*, 800 N.E.2d at 911.

Here, the City's Common Council simultaneously created the Board and set the User Fee. Regardless of the Board's participation in the process, the Council's approval was required. The Council conducted a public hearing on the matter, during which all three eventual members of the Board made comment. Further, the Council structured the User Fee in a manner consistent with the factors and classifications authorized by I.C. § 8–1.5–5–7. That section required the User Fee to be based upon at least one of seven listed "factors," including a flat charge per property and the amount of impervious surface on the property. I.C. § 8–1.5–5–7(d)(1, 2). Meanwhile, the statute authorized the User Fee to consist of classifications, including whether the property was used primarily for residential, commercial, or agricultural purposes. I.C. § 8–1.5–5–7(e)(3). The User Fee was a flat charge for residences and varied by the amount of

sewers), and P.L. 282–2003 (authorizing boards formed under I.C. § 8–1.5–3 to serve as a board for purposes of I.C. § 8–1.5–5).

impervious area for non-residences. Brockmann Enterprises, LLC ("Brockmann") does not argue that the setting of the User Fee was arbitrary or capricious. The City's User Fee met all substantive criteria established by the General Assembly. Procedurally, while the Board did not exist at the time of adoption, all of its members participated in a public hearing on the User Fee. Accordingly, we conclude that any variance from the precise statutory procedure was de minimis.[2]

### III. Equal Protection

In our earlier Opinion, we held for Brockmann based upon one of its arguments. As we reverse on rehearing, we now consider the second issue raised by Brockmann in its Appellant's Brief; whether the Ordinance violated Article I, Section 23 of the Indiana Constitution or Indiana Code Section 8–1.5–5–7.

■ As to the statute, we note that I.C. § 8–1.5–5–7(e) authorizes the User Fee to be based upon certain classifications, including "variations in the costs, including capital expenditures, of furnishing services to various classes of users or to various locations." The User Fee for non-residential properties increased in relation to the amount of impervious area on the property, but could be no greater than $257.81 per month. The City could reasonably have concluded that the cost of providing service to a large commercial location would vary from the cost of serving smaller commercial sites. Accordingly, we conclude that the $257.81 cap was valid under the statute.

■ Article I, Section 23 provides, "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Our Supreme Court has identified three considerations in determining whether this Section has been violated.

First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics [that] distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

---

**2.** Proper appellate advocacy requires a party to fully develop its arguments or risk waiver. Only with a handful of words in a thirteen-page brief did counsel preserve the opportunity to further develop this issue on rehearing.

The Defendants argue that this Court's earlier decision "produces an absurd result," "elevat[ing] form over substance" and "throw[ing legislative] goals out the window." Petition for Rehearing at 8, 12. However, by enacting the Home Rule Act, one goal of Indiana's General Assembly was to grant local units the power to act on issues of local concern. Ind.Code § 36–1–3–2. This goal was tempered, however, on the explicit condition that where a statute provides a specific manner for exercising a power, the unit must exercise the power in that manner. Ind.Code § 36–1–3–6(a). This suggests that the legislature was not willing to trivialize the process for implementing the substantive components of the legislation. As the Home Rule Act is statutory, it is subject to amendment by the legislative branch. Accordingly, it would behoove local authorities to exercise delegated power in the specific manner provided for in the legislation.

Quite candidly, absurd is the ease with which the City could have avoided a challenge to the process of the Ordinance's adoption. While we recognize the difficulty of acting amid changes in federal and state laws, local units should exercise diligence to understand and comply with new statutory obligations so that their decisions carry the legitimacy that accompanies deliberate action on delegated authority. This is especially true where the unit's financial planning hangs in the balance.

The first prong itself has two necessary components: "[a] such classification must be based upon distinctive, inherent characteristics [that] rationally distinguish the unequally treated class, and [b] the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics." Likewise, the second prong is described as comprising two elements: "[a] any privileged classification must be open to any and all persons who share the inherent characteristics [that] distinguish and justify the classification ..., [and] [b] the special treatment accorded to any particular classification [must be] extended equally to all such persons." *Ledbetter v. Hunter,* 842 N.E.2d 810, 812–13 (Ind.2006) (quoting *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994) (internal citations omitted)).

The size of the non-residential property is a distinctive, inherent characteristic. As noted above, the City could reasonably have concluded that it would be more expensive to serve large, non-residential properties than small ones. Further, there is some evidence that the City sought to avoid creating a disincentive toward attracting large businesses. In response to a question during the April 13, 2004 hearing, the City's consultant commented that the Council was concerned about the potential consequence a $3000 per month storm water charge might have on efforts to attract large commercial development. Further, the classification applies uniformly to similarly-sized, non-residential property owners. We conclude that the City had discretion to distinguish between large and small non-residential property owners.

## Conclusion

We conclude that the variance between the procedure set forth in statute and the procedure by which the City set the initial User Fee was de minimis. Further, we conclude that the maximum monthly User Fee for non-residential property did not violate Article I, Section 23 of the Indiana Constitution. Therefore, we vacate this Court's Opinion of February 21, 2007 and affirm the order of the trial court.

BARNES, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I must respectfully dissent from the majority's holding that: (1) the Defendants did not waive their argument that their failure to comply with the statutory procedure for setting the initial storm water user fees was excusable under the *de minimis* doctrine; and (2) the variance from the statutory procedure for setting the initial user fees was *de minimis*.

First, I disagree with the majority's conclusion that the Defendants did not waive their *de minimis* argument. In their Appellees' brief, the Defendants merely stated, "Even if Ind.Code 8–1–5–7(b) is interpreted to mean that the board should conduct the public hearing instead of [the] Common Council, any departure from the permissive, rather than mandatory statutory procedure is of insufficient magnitude to render the Ordinance invalid. *See, Krimendahl v. Common Council of City of Noblesville,* [256 Ind. 191] 267 N.E.2d 547 (Ind.1971)." Appellees' Br. p. 9. The Defendants did not provide any analysis or argument regarding the *de minimis* doctrine, let alone mention it, and did not explain how *Krimendahl* applies to the facts of this case. Because the Defendants did not present a cogent argument regarding the *de minimis* doctrine in their Appellees' brief, they may not do so now on rehearing. *See Ind. State Bd. of Health Facility Adm'rs v. Werner,* 846

N.E.2d 669, 672 (Ind.Ct.App.2006) (holding that an issue raised for the first time on rehearing is waived), *trans. denied.* Accordingly, I would conclude that they have waived any argument regarding the application of the *de minimis* doctrine.

Additionally, I disagree with the majority's holding that "the variance between the procedure set forth in statute and the procedure by which the City set the initial User Fee was de minimis." Opinion on Rehearing p. 8. The Defendants contend that any deficiencies in the City's setting of initial storm water user fees instead of the Board setting the user fees should be excused under the doctrine of *de minimis non curat lex.* *See D & M Healthcare, Inc. v. Kernan,* 800 N.E.2d 898, 900 (Ind. 2003) (explaining that *de minimis* translates to mean that "the law does not redress trifles" or "[i]n contemporary American vernacular, it is the courts' way of saying 'So what?'"). Our Indiana Supreme Court explained that under the *de minimis* doctrine, "immaterial variances from prescribed procedures [will] have no legal fallout." *Id.* at 903. In *D & M Healthcare,* our Supreme Court held that the Governor's delivery of a veto to the General Assembly six months before the first day the legislature convened rather than on that first day they convened was an immaterial variance that did not invalidate the veto.[3] *Id.* at 900–03. The Court explained that in applying the *de minimis* doctrine, "by far the most significant factor is the purpose behind the phrase to be interpreted." *Id.* at 902. The Court determined that the purpose of the language regarding return of a veto "on the first day" the General Assembly is in session after an adjournment was to assure that the legislature have the earliest possible

opportunity to consider, and, if it so chooses, to override the veto. *Id.* Because the Governor's veto met that objective, the Court held that the variance was immaterial. *Id.* at 902–03.

Here, however, the variance in procedure was not immaterial. Unlike *D & M Healthcare,* where the deviation in the procedure involved a variance in the timing of the procedural act of delivering a veto, the deviation in the procedure of the instant case involves a variance in the entity charged with completing the procedural act of setting the storm water user fees. Indiana Code § 8–1.5–5–7, which explains the process to be followed in setting storm water user fees and the factors to be considered when establishing the amount of those user fees, explicitly provides that "[t]he board" is the entity that is to establish, assess, and collect the user fees for the operation and maintenance of a storm water system. Ind.Code § 8–1.5–5–7(b),(d),(e). The purpose of the storm water management statute is to establish an independent entity or a specialized board that has expertise in the area and that is charged with looking at the factors necessary to establish storm water user fees; holding a public hearing where the public has an opportunity to give its input on the establishment of those fees; making findings and recommendations to the "fiscal body" when obtaining approval; and installing, maintaining, and operating the storm water collection and disposal system. *See* Ind.Code §§ 8–1.5–5–6, 8–1.5–5–7(b),(d),(e).

The majority downplays the need for the board's participation in the process of setting the storm water user fees and con-

---

**3.** In part, Article 5, § 14(a)(2)(D) of the Indiana Constitution provides, "In the event of a veto after final adjournment of a session of the General Assembly, such bill shall be returned by the Governor to the House in which it originated on the first day that the General Assembly is in session after such adjournment[.]"

tends that the Council's divergence from the statutory procedure for setting storm water user fees was *de minimis,* in part, because the "Council's approval was required." Opinion on Rehearing p. 5. It is true that the Council has the ultimate fiscal authority in that the board is required to obtain the approval of the Council; however, that approval is only after the board has looked at the factors necessary to establish storm water user fees, held a public hearing, and given its expert recommendation to the Council, which would presumably occur during another public hearing. To allow the Council to bypass the statutory requirement of having the board establish and assess the user fees would run contrary to the statute's purpose of insuring the independent advice and judgment of the board. Therefore, I cannot agree with the Defendants' contention that the substitution of another entity, such as the City's Common Council, anywhere the statute notes that "the board" was to perform a certain act would constitute a *de minimis* variance from the statute. Such an interpretation would substantially change how local government works and would run contrary to the intent of the legislature and the Home Rule Act. *See* Ind.Code § 36-1-3-6(a) ("If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner.").

Therefore, I respectfully dissent from the majority's conclusion that any variance from the precise procedure was *de minimis.*[4] Instead, I would deny the Defendants' petition for rehearing and reaffirm the holding in our original opinion that "the City of New Haven lacked authority to establish the Storm Water Service Charge in a manner contrary to the process contained in [the] statute." *Brockmann Enterprises, L.L.C. v. City of New Haven,* 861 N.E.2d 725, 728 (Ind.Ct.App.2007).

---

**4.** In determining that the variance was *de minimis,* the majority seems to rely upon the Defendants' assertion that the City's Common Council had not yet adopted the provisions of Indiana Code Chapter 8-1.5-5 and had not yet established the Department of Storm Water Management at the time it set the storm water user fees, *i.e.,* the April 14, 2004 hearing. However, as explained in our original opinion and revealed in the designated evidence, the City's Common Council had already established a Department of Storm Water Management when it enacted Ordinance No. G-04-01 in February 2004. *See Brockmann Enterprises, L.L. C. v. City of* *New Haven,* 861 N.E.2d 725, 726-27 (Ind.Ct. App.2007); Appellant's App. p. 150; *see also* Ind.Code § 8-1.5-5-4(b) (providing that a department of storm water management is established and is controlled by a board of directors when the legislative body of a municipality adopts the provisions of the storm water management statute by ordinance). Ordinance No. G-04-02, which repealed Ordinance No. G-04-01 and set the initial storm water user fees, was not enacted until April 27, 2004. Thus, the Department was in existence at the time that the Common Council held the April 14, 2004 hearing regarding the user fees.